**Saeid HUSSEIN, Plaintiff,**

v.

**Alberto GONZALES, etc.,
et al., Defendant.**

**No. 306–CV–497J–32MCR.**

United States District Court,
M.D. Florida,
Jacksonville Division.

Jan. 31, 2007.

Saeid Hussein, Jacksonville, FL, Pro se.

Roberto H. Rodriguez, Jr., U.S. Attorney's Office, Jacksonville, FL, for Defendants.

## *ORDER*

CORRIGAN, District Judge.

This case is before the Court on plaintiff Saeid Hussein's Petition for Hearing on Naturalization Application, under 8 U.S.C. § 1447(b). (Doc 1). Hussein's petition requests (1) adjudication of his naturalization application, and if the Court finds Hussein eligible for naturalization, to administer the oath of allegiance; or alternatively (2) remand of his application, requiring the government to immediately adjudicate Hussein's naturalization application. (Doc. 1). Hussein also seeks an award of attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412. (Doc. 1). The Court held two hearings on the petition on December 20, 2006 and January 25, 2007.

### I. BACKGROUND

Hussein, a native and citizen of Lebanon, has lived in the United States as a lawful permanent residence since July 17, 1992. (Doc. 7 & 8). Hussein filed an application for naturalization with the United States Citizenship and Immigration Services (CIS) on June 5, 2003, via form N–400 (Doc. 8). The CIS Jacksonville sub-office interviewed Hussein on July 26, 2004. That same day, Hussein received his Naturalization Interview Results which

indicated that: (1) he passed the English language test and the U.S. history and government test, (2) CIS would send him a written decision about his application, and (3) a decision regarding his application could not be made at that time. (Doc. 1). Between the July 26, 2004 interview and June 1, 2006, when Hussein filed this petition, Hussein's attorney at the time [1] made two inquires and one response to CIS regarding Hussein's application status. (Doc. 1). CIS stated on all three occasions that Hussein's application could not be acted upon due to a pending FBI background check. (Doc. 1). Hussein's name was initially submitted to the FBI for a background check on June 19, 2003, one year before his interview. (Doc. 17).

Hussein's application for naturalization has yet to be determined and thus remains in limbo. (Doc. 7). The only outstanding issue preventing CIS from adjudicating Hussein's application is the FBI background check, which has now been pending for over three and a half years.

## II. JURISDICTION

8 U.S.C. § 1446(d) requires CIS to determine whether an application for naturalization should be granted or denied, with reasons therefor. Further, 8 U.S.C. § 1447(b) provides that:

> If there is a failure to make a determination under section 1446 of this title before the end of the 120–day period after the date on which the *examination* is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either

determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.[2] (emphasis added)

■ The government moved to dismiss and/ or for summary judgment for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), or in the alternative, for remand to CIS pursuant to § 1447(b). (Doc. 7). The government primarily argues that an "examination" as contemplated in § 1447(b) cannot be "conducted" until the FBI renders a full criminal background check; thus, the 120–day period has not yet begun and this Court is without jurisdiction. (Doc. 7). The government cites *Danilov v. Aguirre,* 370 F.Supp.2d 441 (E.D.Va.2005), for the proposition that the term "examination" in § 1447(b) does not refer to a single event, but to the entire process—which includes the FBI background check. The *Danilov* court dismissed plaintiff's claim for lack of subject matter jurisdiction and explained that an applicant's interview "was merely a part of the overall examination process, as is a review of the plaintiff's FBI background investigation," and as such did not trigger the 120–day period in which a determination must be made. 370 F.Supp.2d at 444.

Although *Danilov* indeed supports the government's position, the vast majority of district courts have rejected *Danilov* and expressed a contrary view.[3] *See Khelifa v. Chertoff,* 433 F.Supp.2d 836 (E.D.Mich. 2006); *El–Daour v. Chertoff,* 417 F.Supp.2d 679 (W.D.Pa.2005); *Essa v. U.S. Citizenship and Immigration Services,* 2005 WL 3440827 (D.Minn.2005) (unpublished); *Shalan v. Chertoff,* 2006 WL

---

1. Hussein is currently representing himself *pro se.*

2. The Immigration and Nationality Act, 8 C.F.R. § 336(b), also uses this language to prescribe a petitioner's right to request a hearing before a district court.

3. There appears to be no appellate decisions which specifically address this issue.

42143 (D.Mass.2006) (unpublished); *Al–Kudsi v. Gonzales,* 2006 WL 752556 (D.Or. 2006) (unpublished); *Daami v. Gonzales,* 2006 WL 1457862 (D.N.J.2006) (unpublished); *Meyersiek v. U.S. Citizenship and Immigration Service,* 2006 WL 1582397 (D.R.I.2006) (unpublished); *Khan v. Chertoff,* 2006 WL 2009055 (D.Ariz.2006) (unpublished). In each case, the district court held that the term "examination" referred to a specific date, the date of the applicant's interview, as triggering the 120–day period in which a determination must be made. Courts have typically rejected the *Danilov* holding for three reasons. First, § 1447(b)'s language that the 120–day period begins to run "after the date on which the examination is conducted," implies that there is a specific date upon which the "examination" occurs. *El–Daour,* 417 F.Supp.2d at 681; *Khan,* 2006 WL 2009055 at *2. Second, § 1446 distinguishes between examinations and investigations, thus, the plain meaning of the substantive statute is that the examination is separate and apart from the investigation. *Daami,* 2006 WL 1457862 at *5. Third, CIS regulations contemplate a distinction between the examination and the investigation. *Khelifa,* 433 F.Supp.2d at 841.[4]

Following the majority of district courts, this Court adopts the interpretation of § 1447(b) that the "examination" occurs on the date of the applicant's interview and thus triggers the 120–day determination period. As previously noted, Hussein's examination was conducted on July 26, 2004 and he waited until June 1, 2006 to file this petition. This almost two-year period well exceeds the 120–day time limit required under § 1447(b). Thus, this Court has subject matter jurisdiction over Hussein's petition. *See also U.S. v. Hovsepian,* 359 F.3d 1144, 1159–64 (9th Cir.2004).[5]

## III. REMEDY

██ The issue now becomes what remedy the district court can provide when CIS has violated § 1447(b). The statute provides that a court "may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter." 8 U.S.C. § 1447(b). Thus, the statute empowers the Court to decide the application itself. However, this Court is not aware of any court which has elected to adjudicate a petitioner's naturalization application. District courts, ruling on similar matters,

---

**4.** 8 C.F.R. § 335.2(a), (c) & (e), require the applicant to "appear in person ... to conduct examinations," permit the applicant to request an attorney be present at the examination, mandate the applicant be under oath during the examination, and requires that the interviewing officer compile all of the evidence received or obtained in the examination process. Further, § 335.2(b) requires that the "initial examination [occur] only after the Service has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of the applicant has been completed." Thus, the regulations indicate that the examination occurs on a specific date, and by requiring that the FBI background check occur before the examination shows that the background check is separate and apart from the examination. *Khelifa,* 433 F.Supp.2d at 841.

CIS, in adjudicating Hussein's application, did not follow its own procedures. Apparently tired of waiting for over a year for the FBI background check or assuming it would be forthcoming shortly, CIS interviewed Hussein on July 26, 2004, thus triggering the 120–day period. Looking at the district court cases, CIS' out of sequence protocol seems common. See *e.g. El–Daour,* 417 F.Supp.2d at 683 (noting that "[h]ere as in *Danilov* and as likely in many other cases, the CIS simply failed to follow its own procedure.").

**5.** The government also posits that the Court lacks jurisdiction under the Administrative Procedures Act, 5 U.S.C. § 701 *et seq,* and the Mandamus Act, 28 U.S.C. § 1361. (Doc. 7). Because this Court has jurisdiction to entertain Hussein's petition under § 1447(b), the Court does not reach these issues.

have opted to remand petitioners' applications to CIS.

The *El–Daour* court, remanding the petitioner's application to CIS with instructions for a prompt resolution upon receipt of the FBI's background check, noted that:

> [T]he very reason that the CIS did not process [the petitioner's] application within 120 days of his examination prevents me from deciding his application. The FBI has not yet competed the criminal background check. This is a vital piece of information. A court is not equipped to conduct such an investigation. I do not have the resources at my disposal to determine whether [the petitioner] present a risk to national security or to public safety.

417 F.Supp.2d at 683–84. The *Essa* court, remanding the petitioner's application to CIS for a prompt resolution, expanded on *El–Daour's* reasoning, explaining that adjudicating a petitioner's naturalization application would contravene Congress' intent to have an FBI background check completed on every applicant prior to a determination. *Essa*, 2005 WL 3440827 at *2.[6]

The *Al–Kudsi* court remanded the petitioner's application to CIS and (1) instructed the FBI to complete and submit the pending name check within 90 days, (2) ordered that if the name check was not submitted within 90 days CIS should treat the failure as if it received a completed name check containing no information that would lead to a denial, and thereafter forward a certificate of naturalization to the court, and (3) explained that the court, upon receipt of the certificate of naturalization, would administer the oath of allegiance during a regularly scheduled oath ceremony or finding delay which constitutes special circumstances under 8 U.S.C.

§ 1448(c), would, at the request of the petitioner, administer the oath on an expedited basis. 2006 WL 752556 at *3.

While this Court recognizes that it has the authority to adjudicate the application pursuant to 8 U.S.C. § 1447(b), it chooses to remand this matter to CIS. The Court does, however, agree with Hussein that because the FBI background check has now been pending for over three and a half years, remand to CIS without instructions is not appropriate. (Doc. 17). Accordingly, it is hereby **ORDERED:**

1. Plaintiff Saeid Hussein's petition (Doc. 1) is **GRANTED** insofar as it requests that the Court remand his application to CIS with instructions for adjudication of his naturalization application. The FBI is directed to promptly complete petitioner's background check and provide the results to the CIS. The CIS is directed to act on petitioner's application as soon as possible and in any event no later than March 26, 2007. CIS will file with the Court a notice when it has complied with this Order.

2. The government's objection to Report and Recommendation (Doc. 11) is **OVERRULED.** The Report and Recommendation (Doc. 10) is adopted; thus, the Government's Motion to Dismiss (Doc. 7) is **DENIED** insofar as it sought the dismissal of this action under Rule 12(b)(1) for lack of subject matter jurisdiction.

3. Hussein's Motion for Summary Judgment (Doc. 17) is **MOOT.**

4. As the prevailing party, petitioner is awarded costs in the amount of $380.72 (filing fee and service costs). No attorney's fees are awarded because petitioner is *pro se*.

---

**6.** See also *Daami*, 2006 WL 1457862 at *6 (remanding the petitioner's application to CIS

with instructions for a prompt resolution).

5. The Clerk will enter an appropriate costs judgment pursuant to paragraph 4 and then close the file. However, the Court retains jurisdiction to enforce the terms of this Order.

## REPORT AND RECOMMENDATION [1]

RICHARDSON, United States Magistrate Judge.

**THIS CAUSE** is before the Court on Defendants' Motion to Dismiss and/or for Summary Judgment (Doc. 7) filed September 8, 2006. Plaintiff, Saeid Hussein, filed a response in opposition to this motion. (Doc. 8). On September 9, 2006, the district judge entered an Order referring the Motion to Dismiss to the undersigned for a report and recommendation. (Doc. 9).

### I. INTRODUCTION

On June 1, 2006, Plaintiff filed a Petition for Hearing on Naturalization Application pursuant to 8 U.S.C. § 1447(b). (Doc. 1). Plaintiff seeks a hearing to determine his naturalization application because Defendants failed to adjudicate his application within 120 days of his examination in violation of 8 U.S.C. § 1447(b) of the Immigration and Nationality Act. In response, Defendants filed the instant Motion to Dismiss and/or for Summary Judgment arguing the Court does not have subject matter jurisdiction over the instant suit as the Citizenship and Immigration Service (the "Service") has not completed its investigation and therefore, the 120–day period referenced in 8 U.S.C. § 1447(b) has not yet commenced. (Doc. 7).

### II. BACKGROUND FACTS

Taking the facts in the Petition as true, the following is a brief factual background for this case. Plaintiff, a lawful permanent resident alien, applied for naturalization to the United States and was interviewed by a Service officer on July 26, 2004. Plaintiff passed the English, U.S. history and government tests, however, was informed that a decision regarding his naturalization could not be made until the FBI completed its background check. On October 31, 2005, Plaintiff's attorney at the time [2] inquired about Plaintiff's application and was informed that the application was fine but could not be processed until the FBI background check was completed. On November 1, 2005, Plaintiff received a second notice to appear for a naturalization interview on December 12, 2005. Plaintiff's attorney again inquired whether Plaintiff would need to appear for the interview given Plaintiff had already been interviewed and passed the tests administered. Plaintiff's attorney was informed Plaintiff would not be required to appear for the December interview and that Plaintiff's application was still pending, waiting for the FBI background check. Finally, on April 4, 2006, Plaintiff's attorney again inquired regarding the status of Plaintiff's naturalization application and was informed that it could not be finalized until the FBI completed its check. As Plaintiff's application has remained pending for over two years from the date of his interview, Plaintiff now petitions the Court pursuant to 8 U.S.C. § 1447(b) for a hearing on the matter.

---

1. Any party may file and serve specific, written objections hereto within TEN (10) DAYS after service of this Report and Recommendation. Failure to do so shall bar the party from a de *novo* determination by a district judge of an issue covered herein and from attacking factual findings on appeal. See 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(a), 6(a) and (e); Local Rules 6.02(a) and 4.20, United States District Court for the Middle District of Florida.

2. Plaintiff is now proceeding *pro se.*

## III. *ANALYSIS*

8 U.S.C. § 1447(b) provides:

> If there is a failure to make a determination under section 1446 of this title before the end of the 120–day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

Defendants argue the "examination" referenced in section 1447(b) does not simply mean the interview, but includes the background investigation conducted by the FBI. As such, Defendants take the position that the 120–day period for Plaintiff's application has not yet run. (Doc. 7). In support of their argument, Defendants cite *Danilov v. Aguirre*, 370 F.Supp.2d 441 (E.D.Va.2005). In *Danilov*, the court determined the "examination" in § 1447(b) was not a single event, but rather, a *"process* the agency follows to gather information concerning the applicant." *Id.* at 443 (emphasis in original). As the Service had not received the FBI's background investigation at the time Plaintiff filed his complaint, the *Danilov* court determined the 120–day period had not yet expired and therefore, it did not have subject matter jurisdiction. *Id.* at 445. The court was persuaded by a reading of 8 U.S.C. § 1446(b), which allows an employee designated to conduct an examination to take testimony, administer oaths and issue subpoenas to compel the attendance and testimony of witnesses as well as the production of relevant documents. *Id.* at 443. Additionally, the *Danilov* court pointed out that beginning in 1998, Congress added a "very important requirement [to] the examination process," by requiring that "the FBI complete a criminal background investigation of an applicant *before* the examination may be completed." *Id.* at 444 (emphasis in original).

As Plaintiff points out, however, the majority of courts to address this issue have rejected the reasoning and holding in *Danilov*, instead finding that the word "examination" in § 1447(b) refers to the date of the examination interview rather than the entire examination process. See *e.g. Khelifa v. Chertoff,* 433 F.Supp.2d 836 (E.D.Mich.2006); *Al–Kudsi v. Gonzales,* 2006 WL 752556 (D.Or.2006); *Shalan v. Chertoff,* 2006 WL 42143 (D.Mass.2006); *Daami v. Gonzales,* 2006 WL 1457862 (D.N.J.2006); *El–Daour v. Chertoff,* 417 F.Supp.2d 679 (W.D.Pa.2005); *Essa v. U.S. Citizenship and Immigration Services,* 2005 WL 3440827 (D.Minn.2005). In reaching this decision, the courts looked at the actual language of § 1447(b) providing that the 120–day period commences on "the date on which the examination is conducted." The courts noted that this language contemplates the examination occurs on a "particular, identifiable date" and that by definition, a process could not occur on one specific date. *El–Daour,* 417 F.Supp.2d at 681.

Additionally, the majority of courts note that the *Danilov* holding also conflicts with the regulations interpreting the Immigration and Nationality Act; specifically 8 C.F.R. § 335.2 "Examination of the applicant," which provides in pertinent part:

> (a) General. Subsequent to the filing of an application for naturalization, each applicant shall appear in person before a Service officer designated to conduct examinations pursuant to § 332.1 of this chapter. The examination shall be uniform throughout the United States and shall encompass all factors relating to the applicant's eligibility for naturalization. The applicant may request the presence of an attorney or representa-

tive who has filed an appearance in accordance with part 292 of this chapter.

(b) Completion of criminal background checks before examination. The Service will notify applicants for naturalization to appear before a Service officer for initial examination on the naturalization application only after the Service has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed....

(c) Procedure. Prior to the beginning of the examination, the Service officer shall make known to the applicant the official capacity in which the officer is conducting the examination. The applicant shall be questioned, under oath or affirmation, in a setting apart from the public. Whenever necessary, the examining officer shall correct written answers in the application for naturalization to conform to the oral statements made under oath or affirmation. The Service officer shall maintain, for the record, brief notations of the examination for naturalization. At a minimum, the notations shall include a record of the test administered to the applicant on English literacy and basic knowledge of the history and government of the United States. The Service officer may have a stenographic, mechanical, electronic, or videotaped transcript made, or may prepare an affidavit covering the testimony of the applicant.... The applicant and the Service shall have the right to present such oral or documentary evidence and to conduct such cross-examination as may be required for a full and true disclosure of the facts.

. . .

(e) Record of examination. At the conclusion of the examination, all corrections made on the application form and all supplemental material shall be consecutively numbered and listed in the space provided on the applicant's affidavit contained in the application form....

8 C.F.R. § 335.2. This regulation makes it clear that the examination is a discrete event rather than a process. For example, the regulation provides for the applicant to appear before an officer for an "examination" which is uniform throughout the country. 8 C.F.R. § 335.2(a). The applicant may request the presence of an attorney at the examination and may present evidence. 8 C.F.R. § 335.2(a) and (c). Additionally, the examination is recorded and may be transcribed. 8 C.F.R. § 335.2(c) and (e). Finally, the regulation illustrates that the background investigation is a separate process by specifically providing that it must be completed before the examination is to be conducted. 8 C.F.R. § 335.2(b).

This Court finds the reasoning of the majority of courts more compelling than the conclusion reached by the court in *Danilov* and holds that the 120–day decision making period begins to run when an applicant "appear[s] in person before a Service officer" pursuant to 8 C.F.R. § 335.2(a). In this case, Plaintiff's examination was conducted July 26, 2004. Accordingly, this Court finds that the Service failed to make a determination before the end of the 120–day period after the date on which Plaintiff underwent his examination. As such, the Court has jurisdiction over this matter and after due consideration, it is

**RECOMMENDED:**

Defendants' Motion to Dismiss and/or for Summary Judgment (Doc. 7) be **DENIED.**