Ghassan ISSA, Plaintiff,

v.

Robert S. MUELLER, III, Director, Federal Bureau of Investigation; Michael Cannon, Section Chief, National Name Check Program, Federal Bureau of Investigation; Alberto Gonzales, Attorney General of the United

---

States; Emilio T. Gonzales, Director, U.S. Citizenship and Immigration Services; Michael Chertoff, Secretary, Department of Homeland Security; Carol Jenifer, District Director for the Detroit CIS District; James Reaves, Supervisory Director, Detroit CIS District; and Malaniak, Former District Adjudications Officer, Detroit CIS District, Defendants.

No. CIV.06 15683.

United States District Court,
E.D. Michigan,
Southern Division.

April 27, 2007.

Bethany D. McAllister Armentero, Dearborn, MI, for Plaintiff Counsel.

Susan K. DeClercq, U.S. Attorney's Office (Detroit), Detroit, MI, for Defendant Counsel.

## OPINION AND ORDER REMANDING CASE TO CITIZENSHIP AND IMMIGRATION SERVICE FOR PROMPT DECISION

FEIKENS, District Judge.

Plaintiff Ghassan Issa, a non-citizen, lawful, permanent resident of the United States, petitions this Court to grant his naturalization application, or in the alternative to issue a writ of mandamus to the government agencies involved in the process of approving his application to immediately complete processing his application. Defendants have moved to dismiss this case for lack of subject matter jurisdiction, or in the alternative to remand to Citizenship and Immigration Services (CIS) to decide his application. I forego oral argument because I find it would not substantially assist me in deciding this issue. *See* E.D. Mich. L.R. 7.1(e)(2). I hereby DENY Defendants' motion to dismiss for lack of subject matter jurisdiction and RE-

MAND this proceeding to CIS with instructions to make a final decision on Plaintiff's application forthwith.

## I. FACTUAL BACKGROUND

Plaintiff filed an application for naturalization on November 22, 2004. (Compl. Ex. 2.) On April 11, 2005, Plaintiff attended his naturalization interview with CIS. (*See* Compl. Ex. 3.) No final decision was made on Plaintiff's application at that interview because CIS had not yet received the results of Plaintiff's mandatory background check conducted by the FBI. (*Id.*) As of the date of filing this petition with the Court, Plaintiff has waited twenty months, or over 600 days since that interview for a decision on his application. Plaintiff inquired as to the status of his application on November 17, 2005 and on May 15, 2006, and informed CIS by letter on November 11, 2006, that he would file this suit in federal court if CIS did not make an immediate decision as to his application. (Compl. ¶¶ 15, 16, & 19.) He asserts he meets all of the requirements to be naturalized. (Compl. ¶¶ 21–23.) Defendants assert the FBI background check is not complete and they are waiting for its completion before deciding Plaintiff's application. (Def'ts Mot. to Dismiss 3.)

Plaintiff seeks three forms of relief from this Court. Foremost, Plaintiff seeks this Court to review his naturalization application *de novo* and approve it. In the alternative from the first request, Plaintiff seeks an Order of Mandamus from this Court ordering the Defendants to immediately complete processing his application. Plaintiff further seeks declaratory relief that Defendants' failure to adjudicate applications that have been pending for more than 120 days violates the Administrative Procedures Act (APA) and the Immigration and Nationality Act (INA). Defen-

dants filed their motion to dismiss February 26, 2007.

## II. LEGAL BACKGROUND

The principal statute at issue is 8 U.S.C. § 1447(b) which reads as follows:

(b) Request for hearing before district court

If there is a failure to make a determination under section 1446 of this title before the end of the 120–day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

Section 1446 addresses the procedure for how naturalization applications are to be reviewed and how decisions on the applications are to be made. The provision that casts the most light on this case is section 1446(b) which reads:

(b) Conduct of examinations; authority of designees; record

The Attorney General shall designate employees of the Service to conduct examinations upon applications for naturalization. For such purposes any such employee so designated is authorized to take testimony concerning any matter touching or in any way affecting the admissibility of any applicant for naturalization, to administer oaths, including the oath of the applicant for naturalization, and to require by subpena the attendance and testimony of witnesses, including applicant, before such employee so designated and the production of relevant books, papers, and documents, and to that end may invoke the aid of any district court of the United States; and

any such court may, in the event of neglect or refusal to respond to a subpoena issued by any such employee so designated or refusal to testify before such employee so designated issue an order requiring such person to appear before such employee so designated, produce relevant books, papers, and documents if demanded, and testify; and any failure to obey such order of the court may be punished by the court as a contempt thereof. The record of the examination authorized by this subsection shall be admissible as evidence in any hearing conducted by an immigration officer under section 1447(a) of this title. Any such employee shall, at the examination, inform the applicant of the remedies available to the applicant under section 1447 of this title.

Congress has also mandated that the FBI complete a criminal background check on naturalization applicants before CIS makes a decision on the application. *See* Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1998, Pub.L. 105–119, Title I, Nov. 26, 1997, 111 Stat. 248 cited in Historical and Statutory Notes to 8 U.S.C. § 1446.

## III. ANALYSIS

### 1. Jurisdiction to Hear Petition

I find I have jurisdiction to hear this case. This is a hotly debated question in district courts throughout the country with little precedent at the circuit level. The issue boils down to the meaning of "the examination" in the statute. Several courts have found that the examination is the interview held between the naturalization applicant and a CIS officer,[1] while others have found that the examination is the entire process through which CIS considers the application.[2] The judges of this Court who have addressed the issue have unanimously found that the examination is the interview alone. *Khelifa,* 433 F.Supp.2d at 840–42 (Rosen, J.)[3]; *Al–Sai-*

---

**1.** *United States v. Hovsepian,* 359 F.3d 1144, 1159–64 (9th Cir.2004) (en banc); *Khelifa v. Chertoff,* 433 F.Supp.2d 836, 840–42 (E.D.Mich.2006) (Rosen, J.); *Al Saidi v. Jenifer,* No. 05–71832, 2005 WL 5179147, slip op. at 2–6 (E.D.Mich. Dec. 23, 2005) (Hood, J.); *Zhang v. Chertoff,* No. 05–72121, 2006 WL 4045600, slip op. at 2–3 (E.D.Mich. Feb. 1, 2006) (Roberts, J.); *Mahmood v. Jenifer,* No. 05–40154, 2005 WL 5179153, slip op. at 2–3 (E.D.Mich. Nov. 30, 2005) (Gadola, J.); *Affaneh v. Hansen,* No. C–3–06–267, 2007 WL 295474, at *2–4 (S.D.Ohio Jan.29, 2007); *Sweilem v. USCIS,* No. 05–CV–125, 2005 WL 1123582, at *1–5 (N.D.Ohio May 10, 2005); *Shalan v. Chertoff,* No. 05–10980, 2006 WL 42143, at *1–2 (D.Mass. Jan.6, 2006); *El–Daour v. Chertoff,* 417 F.Supp.2d 679, 680–83 (W.D.Pa.2005); *Daami v. Gonzales,* No. 05–3667, 2006 WL 1457862, at *3–6 (D.N.J. May 22, 2006); *Attili v. FBI,* No. H–06–0337, 2007 WL 471124, at *1–2 (S.D.Tex. Feb.9, 2007); *Essa v. USCIS,* No. 051449, 2005 WL 3440827, at *1–2 (D.Minn. Dec.14, 2005); *Hamim v. Chertoff,* No. 06CV1568, 2007 WL 679643, at *1–3 (E.D.Mo. Mar. 1, 2007); *Al–*

*Kudsi v. Gonzales,* No. 05–1584, 2006 WL 752556, at *1–2 (D.Or. Mar.22, 2006); *Hussein v. Gonzales,* No. 306–CV–497J–32, 2007 WL 328691, *1–2 (M.D.Fla. Jan.31, 2007); *Castracani v. Chertoff,* 377 F.Supp.2d 71, 72–75 (D.D.C.2005).

**2.** *Damra v. Chertoff,* No. 1:05CV0929, 2006 WL 1786246, at *2–3 (N.D.Ohio June 23, 2006); *El Kassemi v. DHS,* No. 06–1010, 2006 WL 2938819, at *1–2 (D.N.J. Oct.13, 2006); *Danilov v. Aguirre,* 370 F.Supp.2d 441, 443–45 (E.D.Va.2005); *Martinez v. Gonzales,* 463 F.Supp.2d 569, 571–73 (E.D.Va.2006); *Walji v. Gonzales,* No. 06–1163, slip op. at 3–9 (S.D.Tex. Oct.6, 2006); *Abdelkhaleq v. USCIS,* No. 06–CV–427, 2006 U.S. Dist. LEXIS 50949, at *6–10 (N.D.Ind. July 21, 2006).

**3.** The government argues that the force of the court's opinion in *Khelifa* is diminished because its statement that *"Danilov* 'stands alone' in its reading of the statute" is no longer true, and it further argues that the current trend of cases is toward the more expansive interpretation of the examination.

*di*, No. 05–71832, 2005 WL 5179147, slip op. at 2–6 (Hood, J.); *Zhang v. Chertoff*, No. 05–72121, 2006 WL 4045600, slip op. at 2–3 (Roberts, J.); *Mahmood v. Jenifer*, Case No. 05–40154, 2005 WL 5179153, slip op. at 2–3 (Gadola, J.).

■ I believe the interpretation used by the judges of this Court who have decided this issue is correct. When the statute refers to the examination as having "a date," it does not make sense that "the examination" means the entire application process unless Congress thought that process would occur in a single day. If the language was the date the examination was *completed* then perhaps there would be room for debate as to the meaning of

"the examination," but it is not; it says "the date on which the examination is *conducted.*" (emphasis added). Also, interpretation of the relevant regulations[4] show that the examination, as referred to in the statute, means the interview in which the applicant meets with an examiner. The regulation that states "an examination [should happen] . . . only after . . . a full criminal background check of an applicant has been completed" does not make any sense if "the examination" is the entire process of considering the application.[5] (*See* 8 C.F.R. § 335.2.) Further analysis of the regulatory language provides more evidence that the examination is synonymous with the interview.[6] Thus despite the gov-

---

(Def't Mot. to Dismiss 16.) While I dispute the assertion that the recent trend of cases dominantly supports one interpretation or the other, *see infra* nn. 3 & 4, it is correct that other courts have adopted the interpretation of the court in *Danilov*.

**4.** The government argues that these regulations cannot be used against it because they are not substantive rules, but instead merely for internal policy that may be deviated from "in appropriate circumstances." (Def't. Mot. to Dismiss 11 n. 5 citing 5 U.S.C. § 553(b).) First, the meaning of the regulations is not dispositive because the text of the statute alone is sufficient to indicate "the examination" is synonymous with the interview. Second, the regulations still may be cited as evidence that CIS's own interpretation of the term "the examination" is that it is equivalent to the interview and not to the application process as a whole.

**5.** The juxtaposition of this regulation and Section 1447(b) nicely frames the cause of this suit and others like it. The procedure as contemplated by the statute and regulation is that an application is to be filed, a background check on that applicant is to occur, and if no problems are discovered during the background check an examination, or interview, would then occur. Problems have arisen because the CIS has interviewed many applicants long before their background checks have been completed. Hence, although I am certain my interpretation of this

statute is correct, I also believe situations such as these have an element of harmless error to them. Clearly when CIS waits over 600 days after an examination to issue its decision on an application the statute is violated. However, if CIS were to follow the statutes and regulations governing this procedure, no time would be saved for the applicant; the examination would just occur over 600 days later. However, because the clear intent of Congress was to accelerate naturalization applications, and the statutory language gives a definite time frame for decision once an examination has occurred, the statute is violated in situations such as Plaintiff's.

**6.** *See, e.g.*, 8 C.F.R. § 335.1 (referring to "investigation of applicant" as encompassing background checks of naturalization applicant); 8 C.F.R. § 335.2(e) (indicating that examination is smaller part of application); 8 C.F.R. § 335.3 ("A decision to grant or deny the application shall be made at the time of the initial examination or within 120–days after the date of the initial examination of the applicant for naturalization under § 335.2."); 8 C.F.R. § 335.6(a) ("An applicant for naturalization shall be deemed to have abandoned his or her application if he or she fails to appear for the examination"); 8 C.F.R. § 335.7 ("An applicant for naturalization who has appeared for the examination on his or her application as provided in § 335.2 shall be considered as failing to prosecute such application if he or she, without good cause

ernment's assertion that its interpretation of the law should carry the day pursuant to the principles espoused in *Chevron U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), these principles only permit deference to the agency's interpretation of the statute when its interpretation is "based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. 2778. In light of the text of the statute, the regulations promulgated from that statute, and Congress's intent as evidenced by statements made at the time of passing the bill,[7] interpreting "the examination" as being the entire process of considering a naturalization application is impermissible.[8]

Through this interpretation of the statute, I have subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331.[9] I have personal jurisdiction over all of the

being shown, either failed to excuse an absence from a subsequently required appearance, or fails to provide within a reasonable period of time such documents, information, or testimony deemed by the Service to be necessary to establish his or her eligibility for naturalization."); 8 C.F.R. § 337.7(a) (referring to "the time of the examination" as being dictated solely by § 335.2); *but see* 8 C.F.R. § 336.1(a) ("After completing all examination procedures contained in part 335 of this chapter and determining to deny an application for naturalization, the Service shall serve a written notice of denial upon an applicant for naturalization no later than 120 days after the date of the applicant's first examination on the application.").

7. *See, e.g.,* 139 Cong. Rec. H4539–02, H4543 (Statement of Rep. Smith) (stating that 120 day provision "applies only at the interview stage, after the application has already been reviewed by the INS."); *see also id.* at H4542 (Statement of Rep. Morrison) (indicating purpose of legislation was to remedy "long backlogs in moving through the naturalization process once the time period for naturalization has been accomplished and the various requirements of naturalization have been met").

defendants through the statute as well. *See* 8 U.S.C. § 1447(b) ("[T]he applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter.").

### 2. Appropriate Remedy is to Remand to CIS

■ I hereby REMAND this case to CIS to either grant or deny the application. Once a court has jurisdiction pursuant to § 1447(b), it has a choice of two remedies. The statute provides that a court "may either [(1)] determine the matter or [(2)] remand the matter, with appropriate instructions, to the Service to determine the matter." 8 U.S.C. § 1447(b). If this court is to determine the result of the application, it reviews the records *de novo.* (*Id.*)

8. The government argues that if "the examination" in Section 1447(b) referred solely to the interview then the section should refer to Section 1443(a), which addresses interviews, instead of Section 1446, which addresses the application process as a whole. (Def't Mot. to Dismiss 9–10). Interestingly, the subtitle of Section 1443(a), which the government concedes addresses interviews, is "Rules and regulations governing examination of applicants." 8 U.S.C. § 1443(a). There is no evidence that the term examination has any different meaning in Section 1443(a) of the INA than it does in Sections 1446 and 1447.

9. The government argues that the FBI should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) because Section 1447 does not indicate this Court can order it to act. (Def't Mot. to Dismiss 18.) The section fails to indicate who is the proper Defendant in a claim, as it merely states "the applicant may apply" for relief. As the government has introduced no further evidence that the FBI should be dismissed, I see no reason to dismiss it now.

The majority of courts who have reached this question have remanded for decision. *See, e.g., Khelifa,* 433 F.Supp.2d at 842–45 (Rosen, J.); *El–Daour,* 417 F.Supp.2d at 683–84. Their reasons for this remand have one common theme: when the background investigation or some portion of the application process is not yet completed, it is difficult for a district court to decide whether to naturalize the applicant. This Court could conduct its own background investigation and evidentiary hearing to determine if the applicant meets the requirements for naturalization, but such an inquiry is an inefficient use of judicial resources. *See, e.g., Sweilem,* 2005 WL 1123582, at *5. Further, it is preferable to mandate that the agency which is in the business of determining if applicants are proper candidates for naturalization conduct those inquiries. *INS v. Ventura,* 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) ("Generally speaking, a court ... should remand a case to an agency for decision of a matter that statutes place primarily in agency hands.").[10] I have found one case in which a district court decided the merits of the naturalization application under this provision, and it does not explain its reasoning for why it chose to decide the merits instead of remanding to the CIS. *Shalan v. Chertoff,* Case No. 05–10980, 2006 WL 42143, at *2 (D.Mass. Jan.6, 2006).

I believe remand to be the most appropriate option in this case as well. Plaintiff argues that this Court should decide this case because the CIS has displayed utter disregard for the law. As evidence of this,

Plaintiff presents various police and FBI reports indicating he has no arrest records in various locations. (Pl. Resp. Br. 2 & Ex. A.) The presentation of these reports alone, however, cannot decide the issue because we cannot be sure that they accurately portray all of the relevant evidence about the Plaintiff. While it appears from these documents that Plaintiff has no arrest record with the FBI, Michigan, Clinton Township, or Syria, this does not mean he has no arrest records anywhere in the world.[11] Further search is necessary to determine if any concerns exist, and that search is best left to the experts in the field. Thus, I find it appropriate to remand this case to CIS for decision on the application.

It is within my power to include instructions to CIS on this remand. I hereby instruct the FBI to complete its background check and the CIS to reach a decision on Mr. Issa's application forthwith. Both agencies should conduct their roles thoroughly but without any unnecessary delay. I do not believe the imposition of a time limit upon either agency is within the spirit of this remand; the reason I remand this case instead of deciding it in this Court is to return decision of this application to the hands of the experts, and I do not presume to have sufficient knowledge of how long it takes them to make this decision with which they have been tasked. Thus, I instruct the CIS to complete their consideration of this application as quickly as possible without sacrificing the necessary degree of thoroughness.

**10.** The Supreme Court language refers specifically to a court of appeals remanding such a case, but remand from a district court also seems appropriate under the same rationale.

**11.** It also is not clear that arrest records are the only relevant evidence in a background check of a naturalization applicant. It may

be that actions that constitute crimes in some countries are irrelevant to our naturalization inquiry, and actions that are legal in some countries are proper grounds for denying United States naturalization. I find it best to let the experts decide what should be a bar to naturalization and what should not be one.

## IV. CONCLUSION

For the above-mentioned reasons, I DENY Defendants' motion to dismiss for lack of subject matter jurisdiction and RE-MAND this case to Citizenship and Immigration Services (CIS) with instructions to make a final decision on Plaintiff's application forthwith.

IT IS SO ORDERED.