United States Court of Appeals
Fifth Circuit

**F I L E D**

September 14, 2007

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No.  06-20937
Summary Calendar
_____

SHABIR HUSSEIN WALJI,

Plaintiff-Appellant,

versus

ALBERTO R. GONZALES, U.S. Attorney General; MICHAEL CHERTOFF, Secretary, Department of Homeland Security; SHARON A. HUDSON, Director, Houston Office, U.S. Citizenship and Immigration Services; EMILIO GONZALEZ, Director, Citizenship & Immigration Services,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

Before REAVLEY, WIENER, and DEMOSS, Circuit Judges.

PER CURIAM:

Treating the petition for rehearing en banc as a petition for panel

rehearing, the petition for panel rehearing is GRANTED. The prior opinion is withdrawn, and the following opinion is substituted:

Before REAVLEY, WIENER, and DEMOSS, Circuit Judges.

REAVLEY, Circuit Judge:

When the U.S. Citizenship and Immigration Services ("CIS") does not grant or deny an application for naturalization 120 days after the required examination of the applicant, the applicant may ask a U.S. district court to adjudicate the application. 8 U.S.C. § 1447(b). Does the 120 days begin to run after the application interview or after the background investigation is complete? The district court held the latter and dismissed the case for lack of subject matter jurisdiction. Reviewing the record de novo,[1] we reverse and remand.

I.

Shabir Hussein Walji, a Ugandan native and Canadian citizen, has been a lawful permanent resident of the United States since October 16, 1980. Walji filed a Form N-400 Application for Naturalization with the CIS in September 2003. An immigration officer interviewed Walji on April 6, 2004 and informed Walji that he passed the English language, U.S. history, and U.S. government proficiency examinations. However, the officer informed Walji that action on his application would not proceed until the FBI completed a mandatory national

---

[1] Ghanem v. Upchurch, 481 F.3d 222, 223 (5th Cir. 2007).

2

security background check.

When Walji received no answer on his application, he began asking questions. The record is replete with correspondence between Walji and various officials. Two years and a day after his first examination, Walji filed this lawsuit and asked the district court to (1) assume jurisdiction over and adjudicate his application for naturalization or (2) compel the defendants to perform their duty to adjudicate his application.

The district court held that the 120-day period for approval or denial of the application begins to run only when all of the application requirements are complete and that Walji's application was not complete because the FBI had not concluded its background investigation. Because the 120-day period was never triggered, the district court held that it lacked jurisdiction over Walji's lawsuit and dismissed it.

II.

An applicant for Citizenship must first submit a completed Form N-400 Application for Naturalization to the CIS. 8 C.F.R. § 334.2(a). After the application is filed, CIS "shall [if not waived] conduct an investigation of the applicant" that includes, at a minimum, "a review of all pertinent records" and "police department checks." Id. § 335.1. The examination and investigation of

3

the applicant is prescribed in 8 U.S.C. § 1446.[2] Once the investigation is completed, each applicant "shall appear in person" before a CIS officer for an examination. 8 C.F.R. § 335 .2(a). The "examination" includes questioning by the officer about matters the applicant has included in the written submissions in addition to tests administered on "English literacy and basic knowledge of the history and government of the United States." Id. § 335.2(c). The regulations provide that the examination is to be conducted only after the FBI has provided a "definitive response that a full criminal background check of the applicant has

_____

[2] In part, the statute says:

§ 1446. Investigation of applicants; examination of applications

(a) Waiver

Before a person may be naturalized, an employee of the [CIS], or of the United States designated by the Attorney General, shall conduct a personal investigation of the person applying for naturalization in the vicinity or vicinities in which such person has maintained his actual place of abode and in the vicinity or vicinities in which such person has been employed or has engaged in business or work for at least five years immediately preceding the filing of his application for naturalization. The Attorney General may, in his discretion, waive a personal investigation in an individual case or in such cases or classes of cases as may be designated by him.

(b) Conduct of examinations; authority of designees; record

The Attorney General shall designate employees of the [CIS] to conduct examinations upon applications for naturalization. For such purposes any such employee so designated is authorized to take testimony concerning any matter touching or in any way affecting the admissibility of any applicant for naturalization, to administer oaths, including the oath of the applicant for naturalization, and to require by subpena the attendance and testimony of witnesses . . . .

been completed" by confirming (1) the applicant has no administrative or criminal record, (2) the applicant has an administrative or criminal record, or (3) the FBI cannot definitively respond because the necessary fingerprints analysis cannot be completed on the available information. Id. § 335.2(b)(1)-(3). "A decision to grant or deny the application shall be made at the time of the initial examination or within 120-days after the date of the initial examination of the applicant for naturalization under § 335.2." Id. § 335.3(a).

If the CIS does not issue a decision within 120 days of the examination, applicants may seek judicial relief under 8 U.S.C. § 1447(b), which states:

> If there is a failure to make a determination [on the application for naturalization] before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the [CIS] to determine the matter.

It is this statute under which Walji now seeks judicial intervention.

III.

Whether the district court has jurisdiction over Walji's lawsuit hinges upon the statutory application of the term "examination" in § 1447(b). The Government argues that the term "examination" refers to the entire investigative process, including the FBI's security check of an applicant, and until that check is completed, the 120-day period referenced in the section does

5

not begin to run. Walji contends that by "examination" the statute refers to the interview of an applicant, which in his case occurred two years—well over 120 days—before he initiated this lawsuit. Walji thus argues that his 120-day time period began to run on the date of the examination by the immigration officer, notwithstanding the fact that the FBI had not completed its background investigation.[3]

Numerous district courts have decided the issue, reaching opposite conclusions. One of the earliest district courts to consider the issue adopted the position advanced by the Government, concluding that "an examination is not a single event, but instead is essentially a process the agency follows to gather information concerning the applicant," which includes the FBI's security check. Danilov v. Aguirre, 370 F. Supp. 2d 441, 443-44 (E.D. Va. 2005) (emphasis in original). Therefore, the Danilov court held, the "examination" cannot be considered complete until after the FBI concludes its background investigation of an applicant and, as a consequence, courts lack subject matter jurisdiction before the lapse of 120 days after the entire process has been completed. Id. Adopting the district court's analysis in Danilov, a handful of district courts have also held that the 120-day period is not triggered until all aspects of the

---

[3] The Government informs us that the name check was completed subsequent to the time that Walji filed his complaint, but the existence of federal subject matter jurisdiction depends on the facts as they existed at the moment his complaint was filed. See Home Capital Collateral, Inc. v. F.D.I.C., 96 F.3d 760, 762 (5th Cir. 1996).

application process are completed, including the FBI background check.[4]

However, the majority of courts addressing this issue have concluded that the term "examination" in § 1447(b) refers to a discrete event—the agency's initial interview of the applicant—and that the 120-day period begins to run as of the date that interview is concluded.[5]  Generally, these courts reject the

[4]  See Yarovitskiy v. Hansen, No. 1:07-CV-1174, 2007 WL 2301172, at *3 (N.D. Ohio Aug. 8, 2007); Martinez v. Gonzales, 463 F. Supp. 2d 569, 571-72 (E.D. Va. 2006); El Kassemi v. Dep't of Homeland Sec., No. 06-1010, 2006 WL 2938819, at *1-2 (D. N.J. Oct. 13, 2006); Damra v. Chertoff, No. 1:05CV0929, 2006 WL 1786246, at *2 (N.D. Ohio, June 23, 2006).

[5]  See, e.g., Ghanim v. Gonzales, No. C07-594MJP, 2007 WL 2288059, at *1-2 (W.D. Wash. Aug. 6, 2007); Farooq v. Hansen, No. 1:07-CV-0946, 2007 WL 2177890, at *2-3 (N.D. Ohio July 27, 2007); Yang v. Chertoff, No. 07-CV-0241 JM(CAB), 2007 WL 1974943, at *1-2 (S.D. Cal. July 2, 2007); Al-Farisi v. Mueller, 492 F. Supp. 2d 335, 336-37 (S.D. N.Y. 2007);  Silebi De Donado v. Swacina, 486 F. Supp. 2d 1360, 1363-65 (S.D. Fla. 2007); Lin v. Sec'y, U.S. Dep't of Homeland Sec., 485 F. Supp. 2d 263, 265 (W.D. N.Y. 2007); Mahd v. Chertoff, No. 06-CV-01023-WDM-PAC, 2007 WL 891867, at *1-2 (D. Colo. March 22, 2007); Nagem v. United States, 480 F. Supp. 2d 877, 880-82 (N.D. Tex. 2007);  Arshad v. Chertoff, No. 1:06-CV-277, 2007 WL 701185, at *2 (E.D. Tex. Mar. 2, 2007); Hamin v. Chertoff, No. 4:06-CV-1568, 2007 WL 679643, at *2 (E.D. Mo. Mar. 1, 2007); Kheridden v. Chertoff, No. 06-4792 (SRC), 2007 WL 674707, at *3-5 (D. N.J. Feb. 28, 2007); Attila v. F.B.I., --- F. Supp. 2d ----, 2007 WL 471124, at *1-2 (S.D. Tex. Feb. 9, 2007);  Mechanic v. Dep't of Homeland Sec., No. H-06-03524, 2007 WL 580780, at *1 (S.D. Tex. Feb, 20, 2007); Manzoor v. Chertoff, 472 F. Supp. 2d 801, 804-08 (E.D. Va. 2007); Hussein v. Gonzales, No. 306-CV-497J-32MCR, 2007 WL 328691, at *2 (M.D. Fla. Jan.31, 2007); Affaneh v. Hansen, No. C-3-06-267, 2007 WL 295474, at *2-4 (S.D. Ohio Jan.29, 2007); Astafieva v. Gonzales, No. C-06-04820 JW, 2007 WL 120852, at *2 (N.D. Cal. Jan. 11, 2007); Khan v. Chertoff, No. CV-05-00560-PHX-SRB, 2006 WL 2009055, at *1-2 (D. Ariz. July 14, 2006); Khelifa v. Chertoff, 433 F. Supp. 2d 836, 840-42 (E.D. Mich. 2006); Al-Kudsi v. Gonzales, No. CV-05-1584-PK, 2006 WL 752556, at *1-2 (D. Or. Mar. 22, 2006); Shalan v. Chertoff, No. 05-10980-RWZ, 2006 WL 42143, at 1-2 (D. Mass. Jan. 6, 2006); Essa v. U.S. Citizenship & Immigration Servs., No. CIV051449, 2005 WL 3440827, at *1-2 (D. Minn. Dec. 14, 2005); El-Daour v. Chertoff, 417 F. Supp. 2d 679, 680-83 (W.D. Pa. 2005); Castracani v. Chertoff, 377 F. Supp. 2d 71, 73-75 (D. D.C.2005); Meyersiek v. U.S. Citizenship & Immigration Serv., No. 05-398-ML, 2006 WL 1582397, at *2 (D. R.I. June 6, 2006); Angel v. Ridge, No. 2004-CV-4121-JPG, 2005 WL 1263143, at *4 (S.D. Ill. May 25, 2005).

Danilov court's interpretation of § 1447(b) for three reasons: the plain language of § 1447(b), the clear inferences to be drawn from the total statutory and regulatory scheme, and the stated legislative purpose of § 1447(b).

A.

First, the statute's language that the 120-day period begins to run after "the date on which the examination is conducted," 8 U.S.C. § 1447(b), "contemplates that the examination occurs on a particular, identifiable date." El-Daour, 417 F. Supp. 2d at 681. Thus, the plain language suggests that the examination is a distinct, single event—the date on which the interview occurs—triggering the 120-day period, and not an ongoing fluid process encompassing the interview as well as the background investigation. Id. (stating that "[a] 'process' does not occur on one particular and identifiable date."). Further, the term "conducted" would have to be construed to mean "completed or concluded" to reach the conclusion that the examination required by the statute is considered the "process of examination." Id. (refusing to consider "that Congress was so sloppy in its lexicography."). If the statute is intended to set a certain date for the Service to decide, it would have to be the time of the examination. Of course, the Service need not conduct the examination until after the investigation is concluded.

B.

8

Second, the statutory scheme contemplates a distinction between the investigation and the examination, the latter being a discrete rather than a continuous event. The organization of the INA section preceding § 1447 indicates that the investigative process is separate from the examination. See 8 U.S.C. § 1446 (entitled "Investigation of applicants; examination of applications," with subsection (a) referencing what is required for the CIS investigation of the applicant and subsection (b) separately addressing the procedural requirements for the examination of the applicant). Section 1446 further differentiates between the two procedures. Whereas an "examination" must be conducted by an employee of CIS designated by the Attorney General, an "investigation" may be conducted by an employee of CIS or an employee of the United States the Attorney General designates. Id.

CIS's implementing regulations also indicate that the agency itself interprets the investigation as a separate and distinct precedent to the examination, not a subset thereof, and that "examination" means the initial interview and not the entire process. Compare 8 C.F.R. § 335.2 (a), (c), (e), (entitled "Examination of Applicant" and providing for an in-person under-oath appearance of the applicant before a CIS officer with, if requested, an attorney and/or interpreter; permitting witnesses and subpoenas; and requiring the making of a record)) with id. § 335.2 (b) (entitled "Completion of criminal

9

background checks before examination" and stating that the FBI background check must be completed before the applicant is notified to appear for the examination). We agree with the El-Daour court that a thorough reading of 8 C.F.R. § 335.2 reveals that the regulation "can only be understood as equating 'examination' with the 'interview' conducted by the Service officer." 417 F. Supp. 2d at 683; see also Manzoor v. Chertoff, 472 F. Supp. 2d 801, 807 (E.D. Va. 2007) ("It is clear from the plain language of these regulations that the term 'examination' in 8 U.S.C. § 1447(b) means the initial interview of an applicant by CIS."); Richard D. Steel, Steel on Immigration Law §15.20 (2d ed. 1992, updated through August 2007) ("The examination generally involves an interview of the applicant by a naturalization examiner." (emphasis added)). We also agree with the court in Khelifa v. Chertoff, 433 F. Supp. 2d 836, 841 (E.D. Mich. 2006) that, with respect to 8 C.F.R. § 335.2(b), "[b]y referring separately to the FBI background check and the 'initial examination,' and mandating that the former must be completed before the latter will be conducted, this provision plainly contemplates that the background check is independent from, as opposed to a part of, the 'examination.' . . . This provision . . . is incompatible with any notion of an examination as a process that encompasses a criminal background investigation."

CIS regulations also indicate that the agency intends that the 120-day

10

period in § 1447(b) begins to run from the date of the initial examination. The regulation at 8 C.F.R. § 335.3(a) states in part: "A decision to grant or deny the application shall be made at the time of the initial examination or within 120-days after the date of the <u>initial</u> <u>examination</u> of the applicant for naturalization under § 335.2." (emphasis added).  The plain language of this section instructs the CIS that the 120-day period begins to run after the initial examination and not after conclusion of the entire naturalization process.  The language of these regulations, like the language of the statute itself, is plain.

Other regulations also support the interpretation that the 120-day period was meant to begin running on the date of the initial interview.  For instance, if deficiencies in an application are discovered during an "examination," the CIS may reschedule one reexamination under timing constraints pursuant to 8 C.F.R. § 335.3(b), which states that "[t]he reexamination on the continued case shall be scheduled within the 120-day period after the initial examination . . . ." There would be no purpose to specifically permit "one reexamination" if examination includes the process of investigation.   <u>Daami v. Gonzales</u>, No. 05-3667, 2006 WL 1457862, at *5 (D. N.J. May 22, 2006).  This regulation should be considered in conjunction with 8 C.F.R. § 312.5(b), which provides:

> Before an applicant may request a postponement of the second examination to a date that is more than 90 days after the initial examination, the applicant must agree in writing to <u>waive the requirement</u> under section 336 of the Act that the [CIS] <u>must render</u>

11

a determination on the application within 120 days from the initial interview, and instead to permit the [CIS] to render a decision with 120 days from the second interview.

(emphasis added).

C.

Third, legislative history further supports the majority's interpretation of § 1447(b). The 120-day limit was put into place when Congress enacted the Immigration Act of 1990 (the "Act"). See Immigration Act of 1990, Pub. L. 101-649, § 407, 104 Stat. 4978, 5044. Unfortunately, the Act's legislative history does not discuss the 120-day period. See Manzoor v. Chertoff, 472 F. Supp. 2d. 801, 807–808 (E.D. Virg. 2007) (noting that while the Act was described in a committee and conference report, neither mentioned the 120-day limit). But as the Manzoor court notes, in 1989, the Committee on the Judiciary drafted a report discussing the purpose of a proposed bill that would amend § 1447(b) so that it would read as follows:

> Where there has been a failure to make a determination under [§ 1446] before the end of the 90-day period after the date on which the examination is conducted under such section, the United States district court for the district in which the applicant resides shall upon the demand of the petitioner exercise exclusive jurisdiction over the matter.

See H.R. Rep. No. 101-187, at 34 (1989)).

The report explains that "[t]he bill provides that the applicant may petition the court after 90 days of the interview on an application if a decision

12

has not been made on the case." Id. at 14 (emphasis added). The report continues: "[i]t is expected that INS will move expeditiously after full investigation of the facts to calendar cases for examination and decision." Id. This makes it clear that the term "examination" referred to the CIS's interview of an applicant. When Congress later established a 120-day limit in 1990, it used virtually identical language as that used in the proposed 1989 legislation. Compare id. at 34, with Immigration Act of 1990 § 407, 104 Stat. at 5044.

Further, we believe the definition of "examination" in § 1447(b) urged by the Government, which would permit virtually unbounded time to respond to naturalization applications, is contrary to the intended purpose of Congress in passing the Immigration and Nationality Act. A central purpose of the statute was to reduce the waiting time for naturalization applicants. H.R. Rep. No. 101-187, at 8 (1989); 135 Cong. Rec. H4539-02, H4542 (1989) (statement of Rep. Morrison).

IV.

Finally, the weight of the majority's interpretation is augmented by the fact that two circuit courts considering a related question—whether an applicant's suit under § 1447(b) deprives the CIS of jurisdiction over the application—concluded without analysis that where the INS had not acted within 120 days of the applicants' initial interviews, upon the applicants' filing

13

suit the district court took exclusive jurisdiction over their naturalization applications. See Etape v. Chertoff, ----F.3d----, 2007 WL 2200286, at *1, *6 (4th Cir. 2007) ("The 120-day period under § 1447(b) does not even begin to run until after the initial naturalization examination; because many of the CIS's investigatory functions take place before or during that initial naturalization examination . . . ."); United States v. Hovsepian, 359 F.3d 1144, 1151 (9th Cir. 2004) (en banc) ("[Section 1447(b)] provides that, if the INS fails to make a decision regarding a naturalization application within 120 days of an applicant's first interview the applicant may [seek a judicial hearing] on the matter." (emphasis added)).

## V.

We are mindful of Congress's intent that an FBI background check is to be completed before the adjudication of every naturalization application.[6] We are also not oblivious to the increased workload the FBI has faced since the events of September 11, 2001 and in particular its backlog of name check

---

[6] See Dep'ts of Comm., Justice, and State, the Judiciary and Related Agencies Appropriations Act of 1998, Pub. L. No. 105-110, Title I, 111 Stat. 2440, 2448 (1997), reprinted in Historical and Statutory Notes following INA § 335, 8 U.S.C. 1446 (Entitled "Criminal background check as prerequisite to adjudication of application for naturalization" and mandating that "[d]uring fiscal year 1998 and each fiscal year thereafter, none of the funds appropriated or otherwise made available to the Immigration and Naturalization Service shall be used to complete adjudication of an application for naturalization unless the Immigration and Naturalization Service has received confirmation from the Federal Bureau of Investigation that a full criminal background check has been completed. . . .").

14

requests caused by the resubmission of many requests by the immigration services.

But if the triggering date were the date on which the entire process was concluded, irrespective of the interview date, the applicant would have no recourse for delays and courts could do nothing to encourage or require the CIS and the FBI to act in a timely fashion. That would entirely erase the effect of § 1447.

It is clear in this case that events have occurred—or not occurred—out of order. Before the officer administered the examination to Walji, the FBI was supposed to provide a "definitive response" that its background investigation was complete. That did not happen. Instead the officer went ahead with the examination.

The plethora of unpublished district court opinions on this issue may indicate that CIS finds some utility in proceeding without the FBI's response. But because there is currently no required period of time for CIS to conduct the initial interview, CIS could avoid the jurisdiction of the courts by following its own order of events.[7] As a practical matter, this may yet result in long waiting

---

[7] The record in one district court case indicates that, in an apparent reaction to the multitude of cases rejecting the Danilov reasoning, the CIS has decided that it would no longer schedule naturalization interviews before completion of the required background investigation for purposes of judicial economy. See Mostovoi v. Sec'y of Dep't of Homeland Sec., No. 06-CV-6388(GEL), 2007 WL 1610209, *3 n.4 (S.D. N.Y. June 4, 2007).

times for applicants.[8]   Nevertheless, because the clear intent of Congress was to accelerate naturalization applications, and the statutory and regulatory language gives a definite time frame for decision once an examination has occurred, the statute is violated in situations such as Walji's. Id.  That the CIS failed to follow its own protocol in the instant case does not provide support for the Government's statutory interpretation.

Because Walji's interview has been conducted and his background check has now been completed, we are satisfied that the district court will remand to the Service where there should be no impediment to the prompt resolution of the application.

Judgment REVERSED; cause REMANDED.

---

[8] See Issa v. Mueller, 486 F. Supp. 2d 668, 673 n.5. (E.D. Mich. 2007) ("Clearly when CIS waits over 600 days after an examination to issue its decision on an application the statute is violated.  However, if CIS were to follow the statues and regulation governing this procedure, no time would be saved for the applicant; the examination would just occur over 600 days later.").