**PICHARDO–MARTINEZ, Plaintiff,**

v.

**ASHCROFT, et al., Defendants.**

**No. CV–03–480–TUC–JMR.**

United States District Court, D. Arizona.

June 6, 2005.

Nancy Margaret Robinett, Law Offices of Nancy M. Robinett PC, Tucson, AZ, for Plaintiff.

---

Cynthia M. Parsons, US Attorney's Office, Phoenix, AZ, for Defendants.

## ORDER

ROLL, District Judge.

Pending is Defendant's motion to dismiss Plaintiff's second amended complaint. For the reasons stated below, the motion is granted.

### Background

*Plaintiff's Background*

Plaintiff was born in Mexico, and he entered the United States as a lawful permanent resident on April 6, 1959, at the age of nine. (Original complaint ("OC") at 2.) He voluntarily served in the U.S. Army for two years, including active duty in Vietnam, and was honorably discharged in 1970. Plaintiff also served in the U.S. Army Reserves until 1974. (*Id.*) At discharge, Plaintiff was told that he was a U.S. citizen by virtue of his military service, and on his DD–214 discharge document the "U.S. Citizen" box was checked. (*Id.*) Plaintiff has been married to a U.S. citizen since March 1971, with whom he has raised five U.S. born children. (*Id.*) He has eight U.S. born grandchildren. (*Id.*)

In 1983 Plaintiff was convicted for unlawful transportation of marijuana, and in 1997 he was convicted for unlawful possession of marijuana. (*Id.*) In October 2003, Plaintiff was referred to the Pima County Prosecutor's Bad Check Program. (Second amended complaint ("SAC") at 2.) Charges were dismissed after he paid the check in full. (*Id.*) Plaintiff was arrested for criminal speeding on December 29, 2003, but the charges were reduced to a civil traffic violation, and Plaintiff successfully completed traffic school. (*Id.*) Plaintiff voted in several elections in 1988 and 1990 in Pima County, Arizona, based on his belief that he was a U.S. citizen. (OC at 2.)

*Procedural History*

Plaintiff discovered after applying for a job at Davis–Monthan Air Force Base that he had no proof of citizenship. On June 8, 1995, Plaintiff filed an application for naturalization with the Immigration and Naturalization Service (succeeded by the Bureau of Citizenship and Immigration Services). (First amended complaint ("FAC") at 2.) On or about May 21, 1996, the INS conducted an initial examination of Plaintiff. (*Id.*) Apparently, the INS took no further action.

On December 28, 2001, the Executive Office for Immigration Review noticed Plaintiff into removal proceedings.[1] (Exh. 9, Motion to Dismiss (Sept. 17, 2004).) On October 3, 2002, INS denied Plaintiff's request for a finding or a declaration of prima facie eligibility for naturalization. (OC at 3.)

On September 19, 2003, Plaintiff filed his original complaint with this Court, seeking a finding under 8 C.F.R. § 239.2(f) that he is of good moral character and is prima facie eligible for naturalization, in order to terminate removal proceedings and allow Plaintiff to continue his naturalization application with CIS. On September 25, 2003, the immigration court terminated the removal proceedings voluntarily. (FAC at 2.)

On October 15, 2003, Plaintiff filed his first amended complaint, seeking a writ of mandamus to compel CIS to act faster on his 1995 naturalization application. On December 15, 2003, Defendants answered, asserting that Plaintiff's naturalization application process had begun again. CIS fingerprinted Plaintiff on December 17, 2003, and interviewed him on December 23, 2003. On March 2, 2004, the Ninth

---

**1.** Plaintiff gives the date as December 29, 2001. (FAC at 2.)

Circuit decided *United States v. Hovsepian,* 359 F.3d 1144 (9th Cir.2004) (en banc). On March 31, 2004, CIS denied Plaintiff's application for naturalization. On April 2, 2004, Defendants filed a "Suggestion of Mootness" because of the denial.

On June 8, 2004, Plaintiff filed his second amended complaint. Plaintiff asked the Court to adjudicate his 1995 naturalization application *de novo,* arguing under *Hovsepian* that CIS had been without jurisdiction to deny the application. Defendants filed an answer on August 13, 2004, and a motion to dismiss on September 17, 2004.

### Motion to Dismiss

Defendants argue that this Court has no jurisdiction because Plaintiff has not exhausted his administrative appeals from CIS's denial of his application. Plaintiff counters that CIS had no jurisdiction to deny his application because, under *Hovsepian,* this Court has exclusive jurisdiction.

### Legal Standard

Fed.R.Civ.P. 12(b)(1) authorizes dismissal for lack of jurisdiction. "Where a defendant ... asserts that the allegations in the complaint are insufficient to establish subject matter jurisdiction as a matter of law ... we take the allegations in the plaintiff's complaint as true." *Whisnant v. United States,* 400 F.3d 1177, 1179 (9th Cir.2005). "A dismissal for lack of subject matter jurisdiction is a final judgment ...." *Id.* at 1180.

If CIS fails to grant or deny a naturalization application within 120 days after the applicant is interviewed,

> the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the

matter, with appropriate instructions, to the Service to determine the matter.

8 U.S.C. § 1447(b). This provision is

> a mechanism by which naturalization applicants who are impatient with INS delay may skip the agency's analysis of their application and proceed directly to the step in which the district court conducts a de novo review of the application. In other words, ... the applicant may obtain a hearing and de novo proceeding in district court ....

*Hovsepian,* 359 F.3d at 1162. Alternatively, if CIS denies an application, the applicant may appeal the decision to a district court pursuant to 8 U.S.C. § 1421(c), but only after exhausting his administrative appeals. *Id.* at 1162 n. 15.

### Discussion

Plaintiff is not entitled to the relief he requests in his various complaints. Plaintiff's original complaint requests only a determination pursuant to 8 C.F.R. § 239.2(f) that he is prima facie eligible for naturalization, and only in order to terminate his removal proceedings. Yet the Department of Homeland Security deleted § 239.2(f) as of June 13, 2003, *see* 68 FR 35273–01, 2003 WL 21358855, and the immigration court voluntarily terminated the removal proceedings. Similarly, the sole request in Plaintiff's first amended complaint is for a writ of mandamus ordering CIS to promptly process his application. CIS voluntarily complied with this request as well, conducting a second interview and denying the application. Notably, neither complaint requests that the Court rule on Plaintiff's naturalization application.

In his second amended complaint, Plaintiff asks this Court to review his naturalization application *de novo,* arguing under *Hovsepian* that CIS had no jurisdiction to process his application, despite his requests to do so in his first two complaints.

*Hovsepian* held that § 1447(b) gives the district court exclusive jurisdiction over a pending naturalization application when: (1) over 120 days pass from the date of the initial CIS examination; (2) the applicant properly invokes the court's authority; and (3) there are no deportation proceedings pending against the applicant. *Hovsepian*, 359 F.3d at 1164. Exclusive jurisdiction did not vest when Plaintiff filed this case because removal proceedings were pending against him. Yet, because the proceedings were terminated on September 25, 2003, and because Plaintiff's 1996 interview occurred long before this case was filed, the central issue is whether Plaintiff properly invoked the Court's authority.

*Hovsepian* found that not all invocations of § 1447(b) are sufficient to vest exclusive jurisdiction in the district court. *Hovsepian* distinguished *Sze v. INS,* 153 F.3d 1005 (9th Cir.1998), in which the INS granted a naturalization application *after* the plaintiffs sued under § 1447(b). The *Sze* plaintiffs did not trigger the court's exclusive jurisdiction because

> [t]he complaint in *Sze* did not ask the district court to decide the applicants' naturalization petitions. Instead, the plaintiffs had brought a test case urging the court ... to issue a writ of mandamus requiring the INS to act faster on applications. Because the whole premise of the litigation was to ask the court to force the INS to act, and because the plaintiffs never asked the district court itself to review the naturalization applications de novo, the court had no occasion to examine whether it, in the alternative, could act.

*Hovsepian,* 359 F.3d at 1161 (citations omitted).

Here, Plaintiff's original and first amended complaints fail to properly invoke the Court's authority. Although the complaints cite § 1447(b), they do not ask the Court to "review the naturalization application[ ] de novo." Plaintiff's original complaint does not ask for a hearing on his application, but only requests relief pursuant to 8 C.F.R. § 239.2(f), which had been superceded. Plaintiff's only purpose in seeking the prima facie eligibility determination is to "entitle Plaintiff to move for termination of removal proceedings, and thus to continue with his pending application" with CIS. (OC at 1, 3.) Plaintiff thereby concedes that determining prima facie eligibility is significantly less than reviewing a naturalization application *de novo.* *See also De Lara Bellajaro v. Schiltgen,* 378 F.3d 1042, 1047 (9th Cir. 2004) (contrasting the prima facie eligibility determination with *de novo* review of an application). Consequently, the original complaint provides the Court "no occasion to examine whether it ... could act" on the application. Likewise, Plaintiff's first amended complaint, as with the complaint in *Sze,* seeks a writ of mandamus to force CIS to process the application. That request is directly at odds with Plaintiff's current theory that CIS had no jurisdiction, and *Hovsepian* distinguishes such a mandamus request as not triggering exclusive jurisdiction.

Because Plaintiff never invoked the Court's exclusive jurisdiction under *Hovsepian,* CIS had jurisdiction to deny the application. Plaintiff does not deny that he must exhaust his administrative appeals before seeking relief in this Court if CIS retained jurisdiction.

Accordingly,

**IT IS ORDERED** that Defendants' motion to dismiss [DOC # 28] is **GRANTED**.

**IT IS FURTHER ORDERED** that the second amended complaint is **DISMISSED** for lack of jurisdiction. The Clerk of the

Court is directed to enter judgment accordingly and close this case.