Antonio CASTRACANI, Plaintiff,

v.

**Michael CHERTOFF, Secretary, Department of Homeland Security, Defendant.**

Nò. Civ.A. 04–01127(HHK).

United States District Court, District of Columbia.

July 5, 2005.

R. Scott Oswald, Employment Law Group, PLLC, Washington, DC, for Plaintiff.

Pamela D. Huff, US Attorney's Office, Washington, DC, for Defendant.

### MEMORANDUM OPINION

· KENNEDY, District Judge.

Plaintiff, Antonio Castracani ("Castracani"), brings this action against defendant, Secretary of the Department of Homeland Security ("DHS"),[1] claiming that DHS failed to timely adjudicate Castracani's naturalization application pursuant to the Immigration and Naturalization Act ("Immigration Act"), 8 U.S.C. § 1447(b), and

---

1. When this suit was filed, the named defendant was Thomas J. Ridge, who was then Secretary of the Department of Homeland Security. Since that time Mr. Ridge has been replaced by Michael Chertoff. Mr. Chertoff is substituted as the party defendant in this case pursuant to FED. R. CIV. P. 25(d)(1).

respond to Castracani's request for information under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(6)(A)(I). Before the court are DHS's motion to dismiss on the grounds that Castracani's naturalization claim is moot and Castracani's cross-motion to remand with instructions for DHS to approve his naturalization application *nunc pro tunc*.[2] Upon consideration of the motions, the oppositions thereto, and the record of this case, the court concludes that DHS's motion must be denied and Castracani's motion must be granted.

## I. BACKGROUND INFORMATION

Castracani, an Italian national, filed a naturalization application with the Washington, D.C., district office of DHS's Bureau of Citizenship and Immigration Services ("BCIS") on February 28, 2002.[3] Am. Compl. ¶ 7; Pl.'s Ex. 1 at 3. In accordance with naturalization application procedure, Castracani had his fingerprints taken on June 3, 2002, and BCIS interviewed him on March 25, 2003. Am. Compl. ¶ 8. Castracani claims that adjudications officer Reginald Hughes ("Hughes"), who conducted the interview, told Castracani "that his naturalization application would be approved and a Citizenship Oath-taking ceremony appointment notice mailed to him within 90 days." *Id.*

In September 2003, after Castracani had made "repeated status inquiries," Hughes told Castracani that a DHS computer error had caused Castracani's unique "Alien Number" to be assigned to a Moroccan national, "Bahad," delaying the completion of Castracani's background check and approval of his naturalization application. *Id.* ¶ 9. Hughes said he would correct the error, but he could not approve Castracani's naturalization application because the background check had not been completed. *Id.* Castracani claims that "Hughes then took back [ ] Castracani's naturalization approval notice and gave him instead a new notice, back-dated to March 25, 2003, indicating a decision could not yet be made on his application." *Id.*

After Castracani continued to make unsuccessful status inquiries with DHS regarding his application, he filed this action on July 1, 2004. *Id.* ¶¶ 10–13. After Castracani filed this suit, DHS approved his application, and he was sworn in as a naturalized citizen in the District Court for the District of Columbia on December 14, 2004. Def.'s Mot. to Dismiss ("Def.'s Mot.") at 2; Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n") at 3.

## II. ANALYSIS

■ DHS argues that Castracani's claim regarding the approval of his naturalization application should be dismissed as moot since he has already been sworn in.[4] Def.'s Mot. at 2. Castracani disagrees, arguing that his "purported naturalization

---

2. Castracani has withdrawn his FOIA claim. Pl.'s Cross–Mot. at 2. Thus, the court will only examine his Immigration Act claim.

3. The Homeland Security Act of 2002 abolished the Department of Justice's Immigration and Naturalization Service and transferred its functions to BCIS. 6 U.S.C. §§ 291, 271. In addition, the Secretary of Homeland Security was given authority over immigration laws. 8 C.F.R. § 103.1.

4. The United States Constitution limits the federal courts' jurisdiction to claims constituting "cases" or "controversies." U.S. Const. art. III, § 2, cl. 1. This requirement applies to all stages of litigation. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990). A case is "moot" when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) (quoting *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)).

is invalid because DHS did not have jurisdiction to approve his naturalization application. Thus, his prayer for relief remains within the sole jurisdiction of this Court." Pl.'s Opp'n at 6. Castracani is correct.

The Immigration Act provides for an administrative naturalization process, vesting the Attorney General with "the sole authority to naturalize persons as citizens of the United States." 8 C.F.R. § 310.1. However, the Act contains provisions mandating judicial review in limited circumstances, including cases of administrative inaction. *See* 8 U.S.C. § 1447(b).

█ Under current naturalization procedure, an applicant for naturalization must first submit her application materials to BCIS. 8 C.F.R. § 334.2. Following initial administrative processing of the application, BCIS conducts a background investigation of the applicant. 8 C.F.R. § 335.1. Once this background investigation has been completed, and "only after [ ] [BCIS] has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed[,]" BCIS notifies the applicant to appear before a BCIS officer for an examination. 8 C.F.R. § 335.2. At the examination, a BCIS officer interviews the applicant and is required to either grant or deny the application "at the time of the [ ] examination or within 120 days after the date of the [ ] examination." 8 C.F.R. § 335.3. Once an application is granted and the applicant is notified of her eligibility for citizenship, the applicant takes the oath of allegiance "in a public ceremony held within the United States." 8 C.F.R. § 337.1.

When BCIS either denies or fails to make a determination on the naturalization application within 120 days of the examination, the applicant may appeal to the appropriate district court for a hearing. 8 U.S.C. § 1447(b). "Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service. to determine the matter." [5] *Id.* Section 1447(b) has been interpreted as vesting in federal district courts exclusive jurisdiction when a naturalization applicant has filed suit as a. result of DHS's failure to adjudicate her application within 120 days of her examination. *See United States v. Hovsepian,* 359 F.3d 1144, 1162 (9th Cir.2004) (holding that "[u]nder § 1447(b), the court has the last word by exercising *exclusive* jurisdiction over those naturalization applications on which [BCIS] has failed to act in a timely fashion" (emphasis added)).[6] This is so because the statutory language allowing a court to "remand the matter, with appropriate instructions" to BCIS precludes BCIS and the district court from exercising concurrent jurisdiction. *See id.* at 1160 (concluding that "[the] wording [of § 1447(b) ] shows that Congress intended to vest power to decide languishing naturalization applications in the district court *alone, unless* the court chooses to 'remand the matter' to [BCIS], with *the court's* instructions"). Furthermore, under a scheme of concurrent jurisdiction, "[BCIS] [would] no longer have much incentive to act on a naturalization application within the 120–day period." [7] *Id.* at 1163.

That the district court has exclusive jurisdiction is further supported by the gen-

5. DHS's implementing regulations are consistent with 8 U.S.C. § 1447(b). *See* 8 C.F.R § 310.5(a).

6. *Immigration Law and Procedure* notes that "[w]hen a district court has acquired jurisdiction of a case, either through the appellate process or because [BCIS] failed to act on a pending application within 120 days, jurisdic-

tion for decision-making and administering the oath of citizenship lies exclusively with the courts." 7 CHARLES GORDON, IMMIGRATION LAW AND PROCEDURE § 96.07[3][b] (rev.ed., 2005).

7. The Act's legislative history also supports giving courts exclusive jurisdiction when an applicant seeks judicial relief because DHS

eral rule that " '[a] statutory time period is not mandatory unless it *both* expressly requires an agency or public official to act within a particular time period *and* specifies a consequence for failure to comply with the provision.' " *St. Regis Mohawk Tribe, N.Y. v. Brock,* 769 F.2d 37, 41 (2d Cir.1985) (quoting *Fort Worth Nat'l Corp. v. Fed. Sav. & Loan Ins. Corp.,* 469 F.2d 47, 58 (5th Cir.1972)); *see also Brock v. Pierce County,* 476 U.S. 253, 266, 106 S.Ct. 1834, 90 L.Ed.2d 248 (1986) (holding that an agency's failure to act within the statutory deadline was not on its own sufficient to divest the Secretary of jurisdiction because there was "simply no indication in the statute or its legislative history that Congress intended to remove the Secretary's enforcement powers if he failed to issue a final determination on a complaint or audit within 120 days"); *Friends of the Crystal River v. EPA,* 35 F.3d 1073, 1080 (6th Cir.1994) (concluding that "where a statute both requires the agency to act within a certain time period and specifies a consequence if that requirement is not met, the agency will lose jurisdiction to act"); *Gottlieb v. Peña,* 41 F.3d 730, 731–33 (D.C.Cir.1994) (holding that the statutory ten-month period for final action on applications for correction of Coast Guard records was directory rather than mandatory because Congress did not specify any consequences for missing the ten-month deadline). A plain reading of § 1447(b) indicates that Congress expressly provides for a consequence should BCIS fail to make a determination on a naturalization application within 120 days of the applicant's examination, which is that "the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter." 8 U.S.C. § 1447(b).

DHS does not deny that it failed to make a decision on Castracani's naturalization application within 120 days of his examination, as required by § 1447(b).[8] Def.'s Mot. at 1–2. Castracani took his naturalization examination on March 25, 2003. Am. Compl. ¶ 8. Although DHS never states when it approved Castracani's application, it had not adjudicated his application on July 1, 2004, when Castracani filed this action. Def.'s Mot. at 1–2. Thus, at a minimum, more than a year elapsed between Castracani's naturalization examination and the filing of this action, well over the 120 days within which § 1447(b) requires DHS to act before a naturalization applicant may appeal to the courts.

has failed to act in a timely manner. Citing the problem of long backlogs in the naturalization process as a "a very substantial concern," Representative Morrison, who sponsored the Act, explained that:

[the Act] does not take away any of the judicial review rights accorded applicants today. It retains the ability of the applicant to take the case to court.... When no decision is forthcoming within 120 days of the [BCIS] examination, the applicant can file a petition in the court. The court has the ability to make a decision at that time or remand to [BCIS] for further factfinding. 135 Cong. Rec. H4539–02 (1989) (statement of Rep. Morrison).

8. DHS asserts that "[i]n cases where there is a positive hit or match, clearance of the individual may take additional time pending the law enforcement agency's response and ultimate resolution. Prior to a final adjudication, [BCIS] requires a definite response on a requested FBI name check." Def.'s Mot. at 2. This cannot excuse the delay in processing Castracani's application once he had taken his examination. DHS should not have scheduled his examination if Castracani's background check had not been completed. *See* 8 C.F.R. § 335.2 ("The Service will notify applicants for naturalization to appear ... for initial examination on the naturalization application *only after* the Service has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed") (emphasis added).

Once DHS failed to adjudicate his application within 120 days of his examination, Castracani was entitled to file a complaint in this court.[9] § 1447(b). When Castracani did file suit on July 1, 2004, this court obtained exclusive jurisdiction over his naturalization application. *See id.* In arguing that Castracani's claim is moot because DHS ultimately approved his application, DHS misses the point. *See* Def.'s Mot. at 2. The fact is that DHS no longer had jurisdiction to adjudicate Castracani's application once this action commenced, an issue that DHS failed to address.[10] Therefore, in the absence of any evidence indicating that DHS approved Castracani's application before July 1, 2004, DHS's adjudication of Castracani's application is invalid, and jurisdiction lies exclusively with this court to either approve his application or remand it to DHS with instructions.

### III. CONCLUSION

For the foregoing reasons, DHS's motion to dismiss must be denied. Furthermore, consistent with DHS's belated adjudication of Castracani's application, Castracani's cross-motion to remand his case to DHS with instructions to approve his naturalization application *nunc pro tunc* to December 14, 2004, will be granted. An appropriate order accompanies this memorandum opinion.

---

9. Castracani was certainly justified in appealing to this court as his application had been languishing for over two years in the naturalization process. In addition, he diligently followed naturalization procedure, even submitting to a requested second fingerprinting, and made repeated status inquiries before filing suit. Am. Compl. ¶¶ 9–13.

10. DHS simply argues that "a claim should be dismissed on mootness grounds where intervening events prevent the court from granting any effective relief...." Def.'s Opp'n at 2. This argument fails because this court has the sole authority to grant Castracani's requested relief—the approval of his naturalization application.