Reversed and remanded by published opinion. Judge MOTZ wrote the majority opinion, in which Judge SHEDD joined. Senior Judge HAMILTON wrote a dissenting opinion.
OPINION
DIANA GRIBBON MOTZ, Circuit Judge:
We consider here whether a naturalization applicant’s timely filing of a petition in federal court pursuant to 8 U.S.C. § 1447(b) (2000) vests the court with exclusive jurisdiction. In these consolidated cases, after the applicants filed § 1447(b) petitions in the district court, the United States Bureau of Citizenship and Immigration Services (CIS) denied their naturalization applications. The district court then dismissed their § 1447(b) petitions as moot, reasoning that the CIS had retained jurisdiction over the applications even after the § 1447(b) petitions had been filed with the court. Because § 1447(b) vests exclusive jurisdiction in the district court, depriving the CIS of jurisdiction to adjudicate an application unless instructed to do so by the district court, we reverse.
I.
Section 1447(b) provides a naturalization applicant with the right to file a petition for hearing in a federal court if more than 120 days have elapsed since the applicant’s naturalization examination and the CIS has failed to make a determination on the application. The statute states:
If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the [CIS] to determine the matter.
8 U.S.C. § 1447(b).
Both Max Alobwede Etape and Sawsan Abdul Rahim filed naturalization applications with the CIS. When more than 120 days elapsed after their examinations and the CIS had failed to make a determination, both availed themselves of the right to petition in federal court under § 1447(b).
On April 2, 2003, Etape filed his naturalization application. On September 9, 2003, he appeared for his initial naturalization examination. On that day, the CIS issued a continuance letter requesting additional documentation from Etape. On October 6, 2003, Etape filed the additional documentation with the CIS and asked the CIS to resume adjudication of his application. On May 23, 2005, after more than 120 days had elapsed (in fact, more than 20 months had passed) since Etape’s initial examination and he had not received a determination from the CIS, he filed a petition in the district court pursuant to § 1447(b). On October 18, 2005, before the district court acted on Etape’s petition, the CIS denied his naturalization application.
On January 18, 2005, Rahim filed a naturalization application with the CIS. On June 14, 2005, she appeared for her naturalization examination. On February 17, 2006, after more than 120 days had passed without a determination from the CIS, Ra-him filed a petition in the district court pursuant to § 1447(b). On February 28, 2006, again before the district court acted *382 on the petition, the CIS denied Rahim’s naturalization application.
In each case, the district court concluded that § 1447(b) did not deprive the CIS of jurisdiction over the naturalization applications after the applicants filed their § 1447(b) petitions in federal court. Moreover, the court reasoned that its ability to consider the § 1447(b) petitions depended on the underlying naturalization applications remaining undecided by the CIS. Thus, once the CIS denied the applications in these cases, the district court ruled that the § 1447(b) petitions were moot. Accordingly, the district court dismissed both petitions for lack of jurisdiction.
We have consolidated the cases on appeal, and we review de novo the district court’s grant of dismissal under Federal Rule of Civil Procedure 12(b)(1). Hawes v. United States, 409 F.3d 213, 216 (4th Cir.2005).
II.
Only one appellate court has considered in a published opinion whether § 1447(b) vests exclusive jurisdiction in the district court. After an en banc hearing, the Ninth Circuit concluded that § 1447(b) does indeed vest exclusive jurisdiction in the district court, and so prevents the CIS from further action on a naturalization application after a petition has been filed in court, unless the court remands the matter to the CIS. United States v. Hovsepian, 359 F.3d 1144, 1159 (9th Cir.2004) (en banc).[1]
The applicants naturally rely heavily on Hovsepian in support of their argument that a district court has exclusive jurisdiction over a naturalization application after an applicant files a proper § 1447(b) petition with the court. The Government, although it did not petition for certiorari in Hovsepian, contends that the Ninth Circuit erred. The Government maintains that § 1447(b) provides the district court and the CIS with concurrent jurisdiction, which permits the CIS to adjudicate an application even while a § 1447(b) petition is pending in district court. The Government further asserts that the district court loses jurisdiction when the CIS makes a determination on a naturalization application.
To resolve this question, we examine the language of the statute, precedent directing the proper interpretation of such language, and the larger statutory context.
*383 A.
1.
As always, we begin with the language of the statute. Robinson v. Shell Oil Co., 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). Section 1447(b) instructs that after a proper petition has been filed, a “[district] court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the [CIS] to determine the matter.” 8 U.S.C. § 1447(b).
The parties agree that § 1447(b) expressly provides the district court with jurisdiction over a proper petition. The Government contends, however, that the statute only grants the district court jurisdiction concurrent with that of the CIS because, according to the Government, “nothing in the plain language of the statute” divests the CIS of jurisdiction it had before the lapse of 120 days and the filing of the § 1447(b) petition. We cannot agree. Section 1447(b) provides the district court with two options once it has obtained jurisdiction: to “determine the matter,” or to “remand the matter, with appropriate instructions, to the [CIS] to determine the matter.” Giving these words their “ordinary meaning,” as we must, BP Am. Prod. Co. v. Burton, — U.S. -, 127 S.Ct. 638, 643, 166 L.Ed.2d 494 (2006), we can only conclude that a proper § 1447(b) petition vests the district court with exclusive jurisdiction, unless and until the court “remand[s] the matter” to the CIS.
First, although § 1447(b) provides a federal court with “jurisdiction” to “determine the matter,” under the Government’s view, the district court’s power to make this determination can be extinguished if the CIS makes this precise determination first. Indeed, the Government’s interpretation of § 1447(b) effectively enables the CIS, an administrative agency, to divest a federal district court of its congressionally authorized jurisdiction.[2] Nothing in the statute suggests that Congress intended that an agency could subvert Congress’ choice to vest the district court with jurisdiction to “determine the matter” once an applicant files a timely § 1447(b) petition. See Hovsepian, 359 F.3d at 1160 (“How can the court ‘determine the matter’ if the [CIS] has the option to ‘determine the matter,’ too, and essentially force the court to accept its view?”).[3]
Even more damaging to the Government’s position is the language empowering the district court to “remand the matter, with appropriate instructions, to the [CIS] to determine the matter.” The very word “remand” indicates that Congress intended a hierarchy. “ ‘Remand’ *384 means ‘to send back.’ ” United States v. Lee, 786 F.2d 951, 955 (9th Cir.1986) (citing Black’s Law Dictionary 1162 (5th ed.1979) (citing Amalgamated Workers Union of the Virgin Islands v. Hess Oil Virgin Islands Corp., 478 F.2d 540, 542 n. 1 (3d Cir.1973))). When a court remands a case, it sends the case back to the place from which it came “for purposes of having some further action taken” in the tribunal of origin. Lee, 786 F.2d at 955. Accepting the Government’s view would ignore this hierarchy established by Congress. Congress would not have granted district courts the power of “remand” — the power to “send back” — if a naturalization application remained with the CIS after the filing of a § 1447(b) petition. For in that situation, there would be no need for the district court to send anything back — because the CIS would have had the matter all along.
Moreover, accepting the Government’s view would “severely limit” the district court’s remand power, see Hovsepian, 359 F.3d at 1160. Congress empowered the district court in remanding to the CIS to provide the agency “with appropriate instructions.” Those instructions could of course include directions to the CIS to take a particular course of action on an application, to adjudicate an application within a particular period of time, or to follow any number of other directions. But if we adopted the Government’s view, a district court might not retain the power to issue any “appropriate instructions” on remand — because the CIS could strip the court of jurisdiction before the remand order became final. We cannot interpret a statute in a manner that would render some of its language meaningless; rather, we must give effect to each portion of the statute, including that providing district courts with the power to “remand ... with appropriate instructions.” See, e.g., Duncan v. Walker, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (a court has a “duty to give effect, if possible, to every clause and word of a statute,” and should be reluctant “to treat statutory terms as surplusage”) (internal quotation marks omitted).
In sum, the plain language of the statute clearly supports the applicants’ position that proper filing of a § 1447(b) petition provides a federal court with exclusive jurisdiction over a naturalization application.
2.
This analysis of § 1447(b)’s plain language entirely accords with Brock v. Pierce County, 476 U.S. 253, 106 S.Ct. 1834, 90 L.Ed.2d 248 (1986). There, the Supreme Court held that a statute that directed the Secretary of Labor to issue a final determination within 120 days, but did not specify a consequence for the Secretary’s failure to act, did not prohibit the Secretary from acting after the deadline. See id. at 258-62, 106 S.Ct. 1834. The Court refused to hold categorically that a statutory deadline that did not specify a consequence for failure to meet the deadline could never divest an agency of jurisdiction. Id. at 262, n. 9, 106 S.Ct. 1834. Rather, the Brock Court directed that in those circumstances, a court should look to see if “less drastic remedies [are] available for failure to meet a statutory deadline,” and if other sources of congressional intent indicate that Congress nonetheless intended the deadline to be jurisdictional. Id. at 260, 262 n. 9, 106 S.Ct. 1834. Brock thus requires that a court consider Congress’ intent before concluding that a statutory deadline divests an agency of jurisdiction. When, as here, the consequence of a missed deadline is stated explicitly in the statute, and that consequence is to give the affected party the option to seek relief in the federal courts, Congress has evidenced *385 an intent to make the deadline jurisdictional.[4]
Contrary to the Government’s suggestion, our precedent does not diverge from Brock. In cases like Brock, in which a statute contains a mandatory deadline, i.e., that the government “shall” take action within a particular time frame, but “fails to specify the consequences of the government’s failure to comply with that deadline,” we have recognized that “courts should not assume from the statute’s mandatory language itself that a jurisdictional requirement was intended, if a remedy for the government’s noncompliance less drastic than dismissal is available.” See, e.g., United States ex rel. Siller v. Becton Dickinson & Co., 21 F.3d 1339, 1344 (4th Cir.1994). But we have never held, or suggested, that when a statutory timing provision does expressly provide a consequence for noncompliance it is nonetheless not jurisdictional. See Holland v. Pardee Coal Co., 269 F.3d 424, 432 (4th Cir.2001) (identifying the “Brock exception” as the “canon of construction which instructs against treating statutory timing provisions as jurisdictional, unless such a consequence is clearly indicated”) (emphasis added) (internal quotation marks omitted).
Section 1447(b), unlike the statutes interpreted in Brock, Siller, and Holland, clearly prescribes consequences for the CIS’s failure to act: upon an applicant’s petition, a district court acquires jurisdiction and may either decide the matter itself or remand to the CIS with instructions. As discussed above, these consequences evidence Congress’s intent to provide district courts with exclusive jurisdiction upon the filing of a § 1447(b) petition.
Thus, the language of the statute requires us to conclude that § 1447(b) vests the district court with exclusive jurisdiction over a naturalization application, a conclusion that is entirely consistent with the Brock rule.
B.
We note that the statutory context of § 1447(b) also supports this conclusion. Congress enacted § 1447(b) in 1990 as part of an effort to streamline the naturalization process. See Immigration Act of 1990, Pub.L. No. 101-649 § 407(d)(14)(B), 104 Stat. 4978, 5044 (“1990 IMMACT”). Prior to 1990, naturalization applicants faced a two-step process for adjudicating their naturalization applications. See 56 Fed.Reg. 50475, 50476 (October 7, 1991) (citing Naturalization Act of June 29,1906, 34 Stat. 596). First, the Attorney General, after investigating and examining an applicant, recommended an outcome to the district court. See 8 U.S.C. § 1446 (1988). Then, the district court reviewed the recommendation and either adopted it, modified it, or held a hearing on the naturalization application. Id. §§ 1446(d), 1447. Congress thus vested the district court with the power to make the final naturalization determination.
*386 Ultimately, this system proved unworkable because of the backlog it created on district courts’ dockets. See 135 Cong. Rec. H4539-02 (July 31, 1989) (statement of Rep. Morrison) (noting the “long backlogs in moving through the naturalization process”). Accordingly, with the 1990 IM-MACT, Congress attempted to streamline the process by giving the Attorney General authority to naturalize a citizen without permission from the district court. Id. (explaining that “this legislation is directed to change that [two-step] process and to create a one-step option which will allow citizenship to be more expeditiously provided to those who qualify”). But in granting the Attorney General this new authority, Congress recognized the longstanding power the district courts had possessed over naturalization applications and so provided in the new statute that district courts retained their power to review an application if an applicant so chose.
Thus, the 1990 legislation ensures that district courts retain the final word on naturalization applications. If the CIS denies an application, an applicant, after exhausting administrative remedies, may petition for de novo review in the district court. 8 U.S.C. § 1421(c). See also 8 U.S.C. § 1421(b)(1)(A) & (B)(“[E]ach applicant for naturalization may choose to have the oath of allegiance ... administered by the Attorney General or by an eligible court.”) (emphasis added). Congress included this provision in the 1990 legislation because it did not want to “take away any of the judicial review rights accorded applicants” in the predecessor legislation. 135 Cong. Rec. H4542. Congress included § 1447(b) for the same reason — to ensure that applicants had judicial recourse when the CIS failed to act. Ultimately, “it is the applicant, not the government, who decides the place and the setting and the timeframe in which the application will be processed.” Id. (emphasis added).
Our holding that § 1447(b) vests the district court with exclusive jurisdiction furthers the twin congressional goals of streamlining the process but retaining applicants’ judicial rights and ability to choose the forum that will adjudicate their applications. Contrary to the suggestion of our friend in dissent, post at 394, this holding does not in any way diminish the importance of the CIS’s expertise in reviewing naturalization applications. The 120-day period under § 1447(b) does not even begin to run until after the initial naturalization examination; because many of the CIS’s investigatory functions take place before or during that initial naturalization examination, they always take place well before the district court obtains jurisdiction. See 8 U.S.C. § 1446(b) (describing the investigatory methods the CIS can use during examination hearings); 8 C.F.R. § 331.3 (2007) (instructing that the CIS “shall conduct a full investigation of any alien enemy ... either prior to or after the examination on the application”); id. § 335.2(b) (directing that a naturalization examination may occur “only after the [CIS] has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed”). Thus, Congress has designed a system whereby the CIS can and must employ much of its expertise and resources well before the district court can possibly act. It is only when the CIS fails to evaluate the information it has gathered in a timely manner[5] *387 that a district court may step in, if asked. And even then, the CIS, as a party to any § 1447(b) action, can utilize its expertise by presenting its findings to the court.
If anything, it is our dissenting colleague, not us, who “ignores ... congres-sionally bestowed authority,” post at 394-95, — that bestowed on the district court. For the dissent fails to recognize that Congress, in the 1990 IMMACT, specifically retained district courts’ power to adjudicate naturalization applications, at a time when Congress could easily have eliminated that power. Although the dissent worries that district courts lack the “necessary resources and manpower” to conduct appropriate investigations and that our holding will further burden “strained judicial resources,” id. at 394, Congress has evinced no such fear. Congress has not only vested district courts with power to intervene when the CIS fails to act in a timely fashion, but has also empowered district courts to conduct full de novo review of all naturalization applications. That said, our holding does not “require[ ]” a district court “to expend” judicial resources, id. at 394, for § 1447(b) allows a district court to remand a case immediately to the CIS if it so chooses. In sum, our holding in no way undermines the CIS’s exercise of its expertise; rather, our holding simply effectuates congressional intent to allow an applicant to choose “the setting and the timeframe,” 135 Cong. Rec. H4542, in which his application is adjudicated.
III.
Finally, we consider the import of our ruling on those applications the CIS has, in fact, adjudicated while a § 1447(b) petition was pending in federal court. The Government briefly asserts that holding that § 1447(b) vests exclusive jurisdiction in the district court during this period necessarily calls into question the validity of all the naturalization applications granted by the CIS after the filing of a § 1447(b) action. This is so,- of course, only if our holding applies retroactively to such cases.
The Supreme Court has instructed that in determining whether to apply a rule of law retroactively, courts must take account of three considerations: (1) “whether the holding in question decided an issue of first impression whose resolution was not clearly foreshadowed by earlier cases;” (2) “whether retrospective operation will further or retard [the] operation of the holding in question;” and (3) “whether retroactive application could produce substantial inequitable results in individual cases.” Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 88, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (plurality opinion) (alteration in original) (internal quotation marks omitted); id. at 92, 102 S.Ct. 2858 (Rehnquist, J., concurring in the judgment) (agreeing with the plurality’s retroactivity discussion).
Given these considerations, the Court in Northern Pipeline concluded that its holding — that the Bankruptcy Reform Act’s broad grant of jurisdiction to bankruptcy judges violated the Constitution — should not apply retroactively. See also Am. Trucking Ass’ns v. Smith, 496 U.S. 167, 185-86, 110, S.Ct. 2323, 110 L.Ed.2d 148 (1990) (noting that the “Court has also declined to provide retrospective remedies which would substantially disrupt governmental programs and functions”). Subsequently, the Court clarified its Northern *388 Pipeline holding, explaining that when it “applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review.” Harper v. Va. Dep’t of Taxation, 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993) (emphasis added).
Applying Northern Pipeline and Harper here, we conclude that our holding should apply retroactively only to § 1447(b) cases still open on direct review. In this case, like the Northern Pipeline Court, we have considered an issue of first impression, whose retroactive application beyond cases still open on direct review would not only unduly burden the CIS and the courts, but also could upset the rights of numerous citizens whose naturalization applications the CIS previously granted during the pendency of a § 1447(b) petition. Thus, our holding will have retroactive effect only on those § 1447(b) petitions still open on direct review.
IV.
For the foregoing reasons, we hold that the CIS did not have jurisdiction to act when it denied Etape and Rahim’s naturalization applications. Accordingly, we reverse the judgment of the district court and remand both cases to that court.[6] On remand, the district court can decide, pursuant to § 1447(b), whether it wishes to “determine the matter” in each case, or whether it wishes to remand the cases to the CIS.

REVERSED AND REMANDED

. The majority of district courts to have considered the issue have relied on Hovsepian to hold that § 1447(b) vests exclusive jurisdiction in the district court. Compare Kalla v. Chertoff, No. 1:06-CV-1732-MHS, 2007 WL 415157, 2007 U.S. Dist. LEXIS 8324 (N.D.Ga. Feb. 6, 2007) (holding that § 1447(b) vests exclusive jurisdiction in district court), Meyersiek v. U.S. Citizenship & Immigration Servs., No. CA 05-398 ML, 2006 WL 1582397 (D.R.I. Jun. 6, 2006) (same), Meraz v. Comfort, No. 05 C 1094, 2006 WL 861859 (N.D.Ill. Mar. 9, 2006) (same), Zaranska v. U.S. Dep’t of Homeland Sec., 400 F.Supp.2d 500 (E.D.N.Y.2005) (same), and Castracani v. Chertoff, 377 F.Supp.2d 71 (D.D.C.2005) (same), with Perry v. Gonzales, 472 F.Supp.2d 623 (D.N.J.2007) (holding that § 1447(b) confers concurrent jurisdiction on the district court and the CIS), and Farah v. Gonzales, No. Civ. 05-1944 DWF AJB, 2006 WL 1116526 (D.Minn. Apr. 26, 2006) (same). See also Epie v. Caterisano, 402 F.Supp.2d 589, 591 n. 1 (D.Md.2005) (noting in dicta that courts have held that § 1447(b) "grants district courts exclusive jurisdiction over naturalization applications rather than concurrent jurisdiction with” the CIS); Pichardo-Martinez v. Ashcroft, 399 F.Supp.2d 1043, 1045-46 (D.Ariz.2005) (recognizing Hovsepian's holding while ruling that § 1447(b) does not grant the district court exclusive jurisdiction if the plaintiff does not ask the district court to review his naturalization application). But see Kia v. U.S. INS, No. 98-2399, 1999 WL 172818, at *1 (4th Cir. Mar. 30, 1999) (holding that § 1447(b) does not divest the agency of jurisdiction).

. The dissent contends that "nothing short of Article III, § 2 of the United States Constitution strips a district court of subject matter jurisdiction.” Post at 394. The dissent misses our point, however, that under the Government’s view, agency action causes the case to become moot, and the district court to lose its jurisdiction, thus nullifying the statutory grant of authority to the court to determine or remand the matter.

. The Government also argues that a district court need not "accept” the CIS’s "view” on an application because another portion of the statute, 8 U.S.C. § 1421(c) (2000), provides de novo judicial review of a CIS determination denying an application after an applicant has exhausted all administrative remedies. This argument ignores Congress’ clear intent to provide an applicant with an additional judicial remedy if the CIS fails to act within 120 days. Under the Government’s view, a CIS determination (and a late one at that) will force the district court to accept the CIS’s view at the § 1447(b) stage, and will eliminate the remedy set forth in § 1447(b) by preventing the district court from acting until an applicant files a later § 1421(c) petition.

. The Government argues that a holding that § 1447(b) confers concurrent jurisdiction in the CIS constitutes an available "less drastic remedfy].” Brock, 476 U.S. at 260, 106 S.Ct. 1834. Brock, however, only directs courts to search for a “less drastic remedfy]” if & statute does not impose a clear consequence for the agency's failure to act. Where, as here, Congress has specified a consequence for failure to comply with a statutory deadline, a court cannot substitute a "less drastic remedfy].” In asserting that "jurisdiction sharing is by far a less drastic consequence in the circumstances of these cases,” post at 396, the dissent, like the Government, fails to recognize that § 1447(b) clearly provides a consequence for the CIS’s failure to act, rendering the “less drastic remedfy]” inquiry inapplicable.

. We recognize, as the Government argues, that current security concerns sometimes make it difficult for the CIS to make a decision on an application within 120 days. But only Congress can lengthen that period; we must interpret the plain language of the stat *387 ute, which, as discussed above, empowers the district court to either make a determination on an application or remand it to the agency. When the CIS has good reasons for failing to act, certainly a district court has the option to remand the matter to give the agency additional time.

. The Government has moved to dismiss Ra-him's appeal as moot because she continued to pursue administrative remedies while this appeal was pending and has now filed a § 1421(c) action for de novo review in district court. Because we conclude, however, that the CIS lacked jurisdiction to take action after Rahim filed her § 1447(b) petition, we deny the motion.