In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1229

SALEM FUAD ALJABRI,

*Plaintiff-Appellant,*

*v.*

ERIC H. HOLDER, JR., *et al.*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11-cv-00793 — **Charles R. Norgle**, *Judge.*

ARGUED SEPTEMBER 30, 2013 — DECIDED MARCH 11, 2014

Before WOOD, *Chief Judge*, and BAUER and KANNE, *Circuit Judges*.

WOOD, *Chief Judge*. Salem Fuad Aljabri was born in Jordan, but he is of Palestinian descent. In 1997, he married a U.S. citizen; the marriage enabled him to become a lawful permanent resident in 2000. In February 2003, after three years had passed and he became eligible to be considered for naturalization under 8 U.S.C. § 1430, he filed an Application for Naturalization with U.S. Citizenship and Immigration

Services (USCIS), which is part of the Department of Homeland Security (DHS). USCIS conducted a naturalization interview in July 2003 and then sat on Aljabri's application for nearly nine years.

One might think that such a long delay would have prompted Aljabri to follow up somehow. But one would be wrong. Aljabri found his way into federal court under much worse circumstances, accused and then convicted in 2007 on multiple counts of wire fraud, 18 U.S.C. § 1343, money laundering, 18 U.S.C. § 1957(a)(1)(A)(i), and structuring (that is, deceptively organizing transactions so as not to trigger a financial institution's reporting requirements), 31 U.S.C. § 5324(a)(3). On appeal, this court vacated the money-laundering convictions but affirmed the wire fraud and structuring convictions. See *United States v. Aljabri*, 363 F. App'x 403 (7th Cir. 2010). On remand, Aljabri was resentenced to serve 84 months in prison. See *United States v. Aljabri*, 2013 WL 3975255 at *1 (N.D. Ill. July 30, 2013) (denying postconviction relief under 28 U.S.C. § 2255).

Catching wind of his turn to crime, DHS issued a Notice to Appear to Aljabri in 2008, alleging that he was removable from the United States under 8 U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony—namely, a crime causing a loss of more than $10,000 to victims. See 8 U.S.C. § 1101(a)(43)(M). (Aljabri maintains that the loss caused by his crimes was not sufficient to classify them as aggravated felonies, but that question is not relevant to this appeal.) He failed to appear at his immigration hearing in Dallas on April 28, 2010, perhaps, as he says, because he had a medical appointment that prison officials refused to reschedule, or maybe because he refused to leave his cell, as

the government contends. Either way, he was ordered re-moved *in absentia* by the Immigration Judge.

Seeing the writing on the wall, Aljabri filed this lawsuit *pro se* in the Northern District of Illinois on February 3, 2011, asking the district court either to naturalize him or declare him a U.S. citizen based on the 2003 application for naturali-zation that was still languishing at USCIS. Either form of re-lief would have barred the government from removing him from the United States. The district court held on April 20, 2011, however, that it lacked subject-matter jurisdiction over Aljabri's action under 8 U.S.C. § 1252(a)(2)(B)(ii), which di-vests courts of jurisdiction to review any discretionary deci-sion or action by the Attorney General or the Secretary of Homeland Security under "this subchapter" (except for grants of asylum). The court dismissed the case "with preju-dice for lack of subject matter jurisdiction," and on January 10, 2012, it denied Aljabri's motion to alter or amend its judgment. The appeal was docketed in this court on January 30, 2012.

On May 3, 2012, USCIS at last got around to acting on Aljabri's naturalization application, which it denied on three grounds. First, it stated that it could not naturalize a person who was subject to a final order of removal. Second, it con-cluded that it could not naturalize Aljabri because the final order of removal meant that he was no longer a lawful per-manent resident, and only permanent residents can be natu-ralized. Finally, it noted that Aljabri had been convicted of an aggravated felony and thus could not demonstrate the good moral character necessary for naturalization. In the mean-time, Aljabri filed a motion to reopen his immigration case; initially that motion was denied, but on March 29, 2013, the

Board of Immigration Appeals remanded the matter to the Dallas Immigration Court for a full opinion. Those proceedings were ongoing as of the time we heard oral argument, but their resolution does not affect the issues before us.

The government does not defend the district court's judgment based on a lack of subject-matter jurisdiction; on appeal, it agrees with Aljabri that the district court's jurisdictional reasoning was erroneous. Nevertheless, we are required to consider subject-matter jurisdiction as the first question in every case, see *Illinois v. City of Chicago*, 137 F.3d 474, 478 (7th Cir. 1998), and we must dismiss this suit if such jurisdiction is lacking, see FED. R. CIV. P. 12(h)(3). It is our obligation, therefore, to address the issue independently.

The district court relied on 8 U.S.C. § 1252(a)(2)(B)(ii) when it dismissed Aljabri's complaint. That statute provides that no court shall have jurisdiction to review:

> any … decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) [governing asylum] of this title.

8 U.S.C. 1252(a)(2)(B)(ii). There are two problems with applying this statute to Aljabri's case. First, it applies only to statutes "under this subchapter." Section 1252 is in subchapter II of chapter 12 in title 8, but the naturalization statute—8 U.S.C. § 1427—is in subchapter III of the same chapter. Section 1252 is therefore by its terms inapplicable to naturalization decisions.

Second, when basing its holding on § 1252, the district court overlooked 8 U.S.C. § 1447(b), which provides:

> If there is a failure to make a determination under section 1446 of this title [governing naturalization applications] before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

8 U.S.C. § 1447(b). It is hard to find any ambiguity in this language: it expressly gives the district court jurisdiction over suits like Aljabri's. He certainly waited long enough— eight years after his examination, more than 22 times as long as the required 120-day waiting period.

The district court's slip with respect to section 1447(b) is understandable, because Aljabri's complaint makes no reference to it. His silence, however, has no jurisdictional significance. Furthermore, as a *pro se* litigant Aljabri is held to a "less stringent standard" in crafting pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). As we have noted before, *sua sponte* dismissals of complaints without an opportunity to respond "are hazardous … unless the defect is clearly incurable." *Frey v. EPA*, 270 F.3d 1129, 1132 (7th Cir. 2001) (internal quotation marks omitted). Rather than suffer immediate dismissal, Aljabri should have been given leave to amend in

order correct his complaint by stating the correct basis for jurisdiction.

Nor is 8 U.S.C. § 1429 an obstacle to jurisdiction. Section 1429 provides in relevant part:

> [N]o person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act; and no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act.

8 U.S.C. § 1429. Though this statute would prevent a court from approving a naturalization application after removal proceedings have begun or a final finding of deportability has been made, it affects only relief. It is not jurisdictional. *Klene v. Napolitano*, 697 F.3d 666, 668 (7th Cir. 2012). Thus, for example, a court could stay a suit to await the outcome of a removal proceeding without straying beyond its prescribed jurisdiction. *Id*.

The government agrees that the district court had subject-matter jurisdiction under § 1447(b), but it offers a new reason why jurisdiction is defective. It argues that the case is moot because USCIS acted on Aljabri's naturalization application on May 3, 2012 (by which time the case was before this court), thereby giving him all of the relief that he could hope to receive: an answer on his application. Accordingly, says the government, there is no "case or controversy" for

the district court to adjudicate and nothing to send back for more consideration.

The Constitution limits our jurisdiction to live cases and controversies. See U.S. CONST. art. III, § 2. A case is moot, and thus falls outside of the judicial power conferred in Article III, if the outcome will no longer settle an active dispute about the parties' legal rights. See *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013). We are required to dismiss a case that has become moot at any stage in the litigation. *Stotts v. Cmty. Unit Sch. Dist. No. 1*, 230 F.3d 989, 991 (7th Cir. 2000).

Key to the government's mootness argument is the question whether USCIS retained jurisdiction to consider Aljabri's naturalization application while the matter was in the courts. USCIS itself obviously thought that it did, or it would not have issued its order on May 12, 2012. But its opinion cannot be conclusive. To find an answer we must turn back to § 1447(b), which states that after the agency has slept on an application for the 120-day period and an applicant files suit, the court "may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter." For the government to be correct, the statute's effect must be to give the courts and USCIS concurrent jurisdiction over a naturalization application *after* a suit has been filed, rather than to divest the agency of jurisdiction once an applicant has brought her plight to court.

Our sister circuits who have addressed the issue have all rejected the government's position. See *Bustamante v. Napolitano*, 582 F.3d 403, 406 (2d Cir. 2009); *Etape v. Chertoff*, 497 F.3d 379, 383 (4th Cir. 2007); *United States v. Hovsepian*, 359 F.3d 1144, 1164 (9th Cir. 2004) (*en banc*). We add our voice to the chorus. Like those circuits, we start with the plain lan-

guage of § 1447(b), and as they did, we find it incompatible with a system of concurrent jurisdiction. See, *e.g.*, *Bustamante*, 582 F.3d at 406–07. Congress gave the district courts the power to "determine the matter" once a naturalization petition is properly in front of it; it would be illogical to read this unqualified grant of power to contain an unwritten "if …," or to give USCIS the prerogative to nullify the court's statutory power. See *Id*. at 406; *Etape*, 497 F.3d at 383; *Hovsepian*, 359 F.3d at 1160. Similarly, it would render meaningless the district court's power to "remand the matter" if the agency could act even without a remand. The meaning of "remand" is "sending something (such as a case, claim, or person) *back* for further action." BLACK'S LAW DICTIONARY 1406 (9th ed. 2009) (emphasis added); see also *Bustamante*, 582 F.3d at 406–07.

The government attempts to craft an analogy between the scenario here and an appeal of a non-final district court order under an authorized ground of interlocutory appellate review, *e.g.*, 28 U.S.C. § 1292, FED. R. CIV. P. 23(f), or the collateral order doctrine. In that situation, the district court retains jurisdiction over the case during the pendency of the appeal. See 28 U.S.C. § 1292(b); *United States v. City of Chicago*, 534 F.2d 708, 711 (7th Cir. 1976). But the district court's jurisdiction in those cases is not really "concurrent" with that of the court of appeals, in the sense of covering the same issues. The retained jurisdiction allows the district court to proceed with other aspects of the case; it does not mean that the district court can continue to modify the same order that is up on interlocutory appeal. The latter situation would be at best wasteful of resources and at worst chaotic.

The government also directs our attention to some statutes in which Congress explicitly provided for "exclusive" district court jurisdiction over actions previously under agency jurisdiction. It sees these as similar to the immigration statutes now before us. But the statutes cited by the government all provide for judicial review of administratively final orders. Section 1447(b), in contrast, comes into effect when the agency fails to act and allows another entity to step in to fill the void. See 15 U.S.C. § 78y(a)(3) (review of final SEC orders); 7 U.S.C. § 27d(c)(3) (review of agency rules purporting to regulate hybrid instruments by the Commodity Futures Trading Commission); 7 U.S.C. § 136n(b) (review of orders refusing to cancel or suspend registration of pesticides by the Department of Agriculture). Indeed, in two of the three statutes cited by the government, the explicit reference to exclusive jurisdiction was necessary to distinguish between situations in which the courts have exclusive jurisdiction and those in which they have concurrent jurisdiction, because both types of jurisdiction are provided by the statute. See 15 U.S.C. § 78y(a)(3) ("[O]n the filing of the petition, the court has jurisdiction, which becomes exclusive on the filing of the record."); 7 U.S.C. § 27d(c)(3) ("On the date of the filing of a petition … the court shall have jurisdiction, which shall become exclusive on the filing of [other] materials … ."). These differences deprive the statutes on which the government relies of any value as guides for interpreting § 1447(b).

Finally, the government urges that we should not strip agencies of their power to act unless Congress explicitly intended such a consequence. It bases this argument on the Supreme Court's opinion in *Brock v. Pierce County*, 476 U.S. 253 (1960). In that case, the Court held that a statute provid-

ing that the Secretary of Labor "shall" determine the truth of an allegation of misuse of funds within 120 days did not divest the agency of jurisdiction to recover misspent funds after the expiration of the 120-day period. *Id.* at 266. But the government's reliance on *Brock* is odd, to say the least. Both that case and the government's argument here depend on the absence of a statutory consequence for the agency's failure to act. See *id.* at 259 ("[W]hile § 106(b) speaks in mandatory language, it nowhere specifies the consequences of a failure to make a final determination within 120 days."). Section 1447(b), however, does spell out the consequence of USCIS's failure to act: it authorizes the applicant to bring her naturalization application to district court after the specified time has elapsed. *Brock* also noted that the statute it was construing could not be read to "convey rights" on the accused party, *id.* at 264, whereas § 1447(b) explicitly gives a naturalization applicant the right to seek a resolution from the district court. Combined with the statutory language empowering the district court to choose between determining the matter and remanding to the agency, *Brock* seems more helpful to Aljabri's argument than the government's.

We hold, as our fellow circuits have before us, that when an applicant for naturalization has properly invoked § 1447(b) and brought an application to the district court, that court has exclusive jurisdiction over the naturalization application unless and until the matter is remanded to the agency. Therefore USCIS had no jurisdiction to act on Aljabri's naturalization application, and his lawsuit is not moot. We express no opinion about what should happen to Aljabri's application on remand; the district court is fully competent to sort that out and has at its disposal the full range of options given by § 1447(b).

We REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion.